## CHICAGO & ALTON R. R. CO.
### v.
## CATHARINE KELLY, ADMINISTRATRIX.

*Railroads—Personal Injuries—Fellow-Servants—Contributory Negligence—Damages—Instructions.*

1. The question of contributory negligence upon the part of an employe of a railroad company, injured in the course of his employment, should be left to the jury.

2. A railroad section hand is not a fellow-servant of men in charge of a construction train, unless they are together co-operating in furthering a particular business of the common master.

3. In the case presented, the co-operation of the section hands and the crew of the construction train in placing ballast upon the road-bed ceased when they returned to their former and separate duties.

4. It is proper to refuse instructions which tend to mislead, or seek improperly to take a question from the jury.

5. It was not the duty of the court to give the jury an instruction as to what facts would constitute the employes of the defendant fellow-servants, there being no request of that nature.

6. In the absence of evidence of passion or prejudice on the part of the jury in the case presented, this court declines to interfere with the verdict for the plaintiff for $2,500 as excessive.

[Opinion filed May 25, 1888.]

APPEAL from the Circuit Court of McLean County; the Hon. C. B. SMITH, Judge, presiding.

Messrs. FIFER & PHILLIPS and WILLIAMS & CAPEN, for the appellant.

No recovery can legally be had in this case for the reason that Patrick Kelly was the fellow-servant of the men who operated the train by which he was struck. Abend v. T. H. & I. R. R. Co., 111 Ill. 202; C. & E. I. R. R. Co. v. Geary, 110 Ill. 383; Voltez v. O. & M. Ry. Co., 85 Ill. 500; C. & A. R. R. Co. v. Murphy, 53 Ill. 336; T. W. & W. Ry. Co. v. Durkin, 76 Ill. 395; St. L. & S. W. Ry. Co. v. Britz, 72 Ill.

256; C. & A. R. R. Co. v. Keefe, 47 Ill. 108; I. C. R. R. Co. v. Cox, 21 Ill. 20; C. & N. W. R. R. Co. v. Moranda, 93 Ill. 302; C. & A. R. R. Co. v. Hoyt, 16 Ill. App. 237; C. & A. R. R. Co. v. O'Bryan, 15 Ill. App. 134.

There was no conflicting testimony as to what relation Kelly bore, in the service, to the men whose conduct is in question. The degree of association of Kelly with them, the nature of their respective employments, what they had all been doing on that day and what they were doing respectively at the particular time Kelly was hurt—all these things appear from the perfectly harmonious account of the different witnesses. The men being employed by the same master, the presumption would be they were fellow-servants until the contrary was made to appear from the evidence; and, unless such a state of facts was shown as would remove this presumption, and serve to ground a verdict that the men were not fellow-servants, it was error to submit the question to the jury at all. We contend the court should, on the state of facts proved, have instructed the jury the men were fellow-servants and that no recovery could be had.

"Whether there is any evidence upon a given question or not, is a question of law for the court, and it is error to submit that question to a jury." C., B. & Q. R. R. Co. v. Warner, 108 Ill. 538.

An instruction which assumes there is evidence of a fact when there is none, is misleading and erroneous, and serves only to furnish the jury a pretext to find against the real facts. C. & A. R. R. Co. v. Bragonier, 119 Ill. 51.

We think, under the principle of the above cases and in the light of the evidence, the relation of the men to each other resolved itself into a pure question of law, and should have been so treated by the Circuit Court. This court in the case of O'Bryan, 15 Ill. App. 134, held, as a proposition of law under the evidence, that O'Bryan was the fellow-servant of the offending employes.

Messrs. STEVENSON & EWING, for appellee.

Kelly and the train crew in charge of the freight train were not fellow-servants. Ryan v. C. & N. W. R. R. Co., 60 Ill.

171; C., M. & St. Paul Ry. Co. v. Ross, 112 U. S. 377; C. & N. W. R. R. Co. v. Moranda, 93 Ill. 302; P., F. W. & C. Ry. Co. v. Powers, 74 Ill. 371; C. & A. R. R. Co. v. May, Adm'x, 108 Ill. 288; C. & N. W. R. R. Co. v. Bliss, 6 Ill. App. 411; Rolling Mill v. Johnson, 114 Ill. 57; T. W. & W. Ry. Co. v. O'Conner, 77 Ill. 391.

Imprudent conduct from sudden fright is chargeable to the original wrong-doer. Collins v. Davidson, 19 Fed. Rep. 83; Stokes v. Staltonstall, 13 Pet. 189; Jones v. Boyce, 1 Starkey 493; C., R. I. & P. R. R. Co. v. Dignan, 56 Ill. 487; C. & A. R. R. v. Garney, 58 Ill. 83; Galena & C. U. R. R. Co. v. Yarwood, 17 Ill. 609.

It is negligence in a railroad company to make "running" or "flying" switches. C., B. & Q. R. R. Co. v. Triplet, 38 Ill. 482; C., R. I. & P. R. R. v. Dignan, 56 Ill. 478; I. C. R. R. Co. v. Backes, 55 Ill. 379.

It is negligence in a railroad company to run cars in on a side track, where other cars are standing and persons working about them, without giving notice of an intention to do so. I. C. R. R. Co. v. Hoffman, 97 Ill. 287; Rolling Mill Co. v. Johnson, 114 Ill. 57.

CONGER, P. J. This was a suit brought by appellee as administratrix of her deceased husband, Patrick Kelly, against appellant, in which she recovered a judgment for $2,500.

The principal facts are as follows: Patrick Kelly was a section hand, employed by appellant upon a section of the road about seven miles in length, including the village of Hopedale. He worked under one James Mehan, foreman.

His duties were, as given by his foreman, as follows:

Mehan says: "I was his foreman; I had six men working under me; the men under me had to do all necessary work; anything that was ordered to be done under my control; the men under me were doing track repairing; it was our business to keep the track in repair; I had seven miles under my control; the men under me threw up embankments, raised up the track, put in rock and tiled under it, attended to the fences along the track and the ballasting, and any other thing we

had to do in the line of repairs. It sometimes becomes my duty to shove cars from one place to another with my men; I take hold of them to shove ; do not get on the engine to run them; simply shove the cars from one place to another on the track; that is all I have to do with the cars." After Kelly had been in the employ of the company a few days, and on the 5th day of January, 1886, a freight or construction train started out from Bloomington for the purpose of hauling a load of rock to be distributed along the track two or three miles southwest of Hopedale for the purpose of ballasting the track. The train consisted of twenty-two flat cars, a caboose, and an engine. It was managed by a crew consisting of a conductor, engineer, fireman and two brakemen. The section force, including Kelly, had boarded the construction train as it passed Hopedale, and assisted in unloading the stone, or ballast, which work occupied them until the middle of the afternoon. The train had returned to Hopedale at noon to enable the men to get their dinner, and upon two or three other occasions to let other trains pass. When the unloading was completed and about three or four o'clock in the afternoon, the train with the men returned to Hopedale.

The train men began to prepare the train for returning to Bloomington and the section men were ordered by Mehan, their foreman, to take some old iron, which had been gathered up along the road at some former time and placed on the depot platform, and carry it across the main track and place it on a flat car standing on the side track, just opposite the platform. This car was no part of the construction train.

After some time spent by the trainmen in switching and arranging their train for its return to Bloomington, they desired to transfer the engine from the southwestern end of the train to the other, and they did this by a running or flying switch.

The train was backed up on the main track toward Bloomington, a sufficient distance for the purpose intended, and then started back, and after having acquired a speed of some eight miles an hour, the engine was cut loose from the train and, increasing its speed, ran in upon the side track, where three

or four cars were standing, upon one of which the old iron was being loaded by Kelly and others.

The engine did not go far enough upon the side track to let the train pass it without a collision, but the tender of the engine was struck by the caboose, breaking off the cross-beam and steps of the caboose and injuring the tender. The engine was at once moved forward by the engineer, striking one of the cars standing on the side track with such force as to break off the cowcatcher, break the headlight and the cast iron heading of the boiler, knock the trucks from under the car in front and throw it forward against the car upon which the iron was being loaded and which, from the force of the blow, was moved forward about its length. It produced considerable noise and confusion. Kelly, with another man, was at this moment placing a large piece of iron upon the car, and they had to step along with the moving car to keep it from falling to the ground. As soon as they could let go of it they did so, and turned to go across the main track to the platform. The train with the caboose in front was coming down the track at the rate of about eight miles per hour; Kelly's companion succeeded in reaching the platform, but Kelly was struck and killed by the train.

The errors assigned by appellant are, first, that Kelly was killed by his own negligence. It is insisted upon the one hand, there was great noise and confusion when the engine struck the car in front of it, amply sufficient to cause Kelly to lose his presence of mind, and, under the excitement of the moment, excuse him from what is claimed was negligence; while this is denied by appellant, and it is claimed there was nothing in the occurrence to excuse Kelly from such care and caution as a reasonable man would be expected to exercise. The determination of this question, under the circumstances, was one for the jury. It was for them to say, under the evidence, whether Kelly's conduct in attempting to cross the main track at the time, was careless and imprudent, and if it was, whether it was done under the excitement of sudden peril and alarm caused by the acts of appellant's servants.

As said in C., R. I. & P. R. R. Co. v. Dignan, 56 Ill. 487, " The question of negligence can be measured by no fixed and

unbending rule.　Each case must be tested by its own peculiar facts.　An act which might justly be regarded as inexcusably careless, if done coolly and deliberately, and with nothing to disturb the ordinary action of the brain, may, on the other hand, be pardoned as not unnatural if done under the excitement of sudden peril and alarm."

The second error assigned is that Kelly was a fellow-servant with the train men.

During the time Kelly was upon the train, going to and returning from the place of unloading, and while the stone was being unloaded, he and the train men were clearly fellow-servants.　Abend v. T. H. & I. R. R. Co., 111 Ill. 202.　Prior to that time and after the train left Hopedale, they would not have been.

We think when the train returned to Hopedale, and the section men quit it, and began to load the old iron upon a car in no way connected with the train, the co-operation and association in furthering a particular business of the common master, in which they had been engaged up to that moment with the train men, ceased.　The particular work of placing the ballast along the sides of the road, which had required their joint labors, had been accomplished; and each set of men returned to their former employment.

While it may be said the switching and arranging the train at Hopedale, preparatory to returning to Bloomington, was a part of the particular work of hauling ballast, as to the train crew, it was not as to the section men, for their joint duties with the train men had ceased as completely as though a day had intervened between the return to Hopedale and the accident.

The co-operation in the particular work of placing ballast upon the road-bed must have ceased at some time, and we hold it did cease at the moment when each set of men returned to their former and several duties; the train men to running their train, or preparing it to leave, and the section men to other and independent labor, under the direction of their foreman, in no way connected with the labor in which the train men were then engaged, or that had just before occupied the attention of both.

C. & A. R. R. Co. v. Kelly.

The fourth refused instruction of appellant was properly refused, for the reason that it sought to take the question of whether Kelly was a fellow-servant with the train men from the jury. I. & St. L. R. R. Co. v. Morgenstern, 106 Ill. 216. The first, second and third refused instructions were not accurate and would have tended to mislead the jury, and hence were properly refused.

It is insisted that the court erred in not giving to the jury a proper definition of what facts would constitute fellow-servants. We do not understand it to be the duty of the court to do so, unless asked.

The fourth assignment of error is that the damages are excessive. We see no evidence of passion or prejudice upon the part of the jury, and feel no disposition to interfere with their deliberate judgment as to the value of Kelly's life to his wife and family.

There is no fixed standard by which damages can be determined in cases like this, and when a jury, without passion or prejudice, have determined the amount, it should not be disturbed unless so high as to strike a court at first blush as unreasonable.

The judgment of the Circuit Court will be affirmed.

*Judgment affirmed.*