# LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY

v.

# SARAH A. PARKER, EXECUTRIX, ETC.

*Railroads—Negligence of—Open Switch—Personal Injuries—Joint Use by Several Roads of the Same Track—Excessive Rate of Speed—Ordinance—Rules and Regulations.*

1.   A railroad company is estopped, in an action against it to recover for personal injuries alleged to have been occasioned through its negligence, to set up as a defense that its rule as to speed was disobeyed by deceased, in the face of evidence going to show that the rate of speed in question was required by the company.

2.   In an action to recover from a railroad company for the death of a locomotive engineer in the employ of another company, alleged to have been occasioned through the negligence of the servants of the former company in leaving a switch open, this court declines, in view of the evidence, to interfere with the verdict for the plaintiff.

[Opinion filed July 2, 1889.]

APPEAL from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding.

Mr. PLINY B. SMITH, for appellant.

There are few cases in the books involving accidents of this kind, thus indicating either that a disregard of signals by railroad employes is exceedingly rare, or else that injuries received as the result of such disregard are by common consent regarded as without remedy.

The duty to watch for signals has been carried so far that the Supreme Court of Michigan recently decided, that if a traveler upon the highway drove upon a railway crossing in disregard of the sign-board giving notice of the track, he is guilty of such negligence as to preclude recovery for an injury received from a collision upon the crossing.   Potter v. F. & P. M. R. R. Co., 28 N. W. Rep. 714.

Chief Justice Campbell, in delivering the opinion, says: "The sign-board was in plain sight for a long distance, and admonished them that there was a crossing before them. If they didn't see it they were in fault for not doing so. No plainer warning can be devised, and no reason is given, nor is it imaginable why they didn't stop, or in any way act upon it."

\*    \*    \*    \*    \*    \*    \*    \*    \*

"If men do not choose to heed what they ought to heed, they must bear the consequences. It is the duty of all highway travelers to keep a due lookout. There may be some conflict upon other points, but upon the plaintiff's gross negligence there is no conflict."

In Morse v. Duncan (U. S. Cir. Court, S. D. Miss.), 8 Am. & E. R. R. Cases, 374, it is held that it is the duty of an engineer to watch for a signal, and stop at a flag station, and if the train does not stop on such signal the person so prevented from taking the train at that point may recover damages.

In Lombard v. C., R. I. & P. R. R. Co., 47 Iowa, 494, it was held that where a handcar overtook and collided with another handcar going in the same direction upon the same track, that the employes upon the former handcar were guilty of negligence in not observing and obeying the signals to stop given by those upon the latter.

In the case of C. & N. W. Ry. Co. v. Snyder, 117 Ill. 376, which arose out of a collision between a train on the track of the C. & N. W. Ry. Co. and a train on the track of the C., M. & St. P. Co., on account of a misunderstanding concerning the signal by which the passage of trains on both roads over the crossing was regulated, the C., M. & St. P. Ry. Co. asked an instruction to the effect that if the semaphore signal was given to its train to proceed, and make the crossing, and was not given to the train of the C. & N. W. Ry. Co., the jury should find for the C., M. & St. P. Ry. Co. This instruction was refused. It was contended on the trial that the signal man gave the proper signal to the train on the St. Paul road to cross, and that the engineer on the Northwestern train negligently failed to observe such signal, and undertook to make the crossing in disregard of it.

L. S. & M. S. Ry. Co. v. Parker.

The court in its opinion say: " There was evidence intro-
duced on the trial tending to prove that after the west-
bound train on the Northwestern road had crossed, the
semaphore signal was then given to the St. Paul train to
proceed, and that the train under the control of Snyder had
no right then to move, and under the pleadings and evidence
we see no reason why the instruction was not proper."

The signal being displayed that the switch was wrong, noth-
ing can excuse Parker for running through it. It was
claimed, however, that the switch was obscured by smoke and
steam from the engine, so that it was hidden from Parker's
view, and that this fact relieved him from the duty to regard it.

Parker was guilty of gross negligence, if the signal which it
was his duty to watch for and obey was obscured from sight,
for running past the switch at a reckless and dangerous rate
of speed, and not putting his train under control until he
should ascertain its condition.

He was running under circumstances of peculiar danger;
he was beyond the reach of telegraphic orders, "feeling his
way along," running on his own responsibility. Numerous
switches led from the main track; his train was behind time,
and the switch and main track were likely to be in use; he
was approaching, if not the most, one of the most dangerous
points between Chicago and Englewood—a switch almost con-
stantly in use, where one or more engines were continually at
work, passing back and forth across the main track.

Under these circumstances of more than ordinary danger,
instead of running with more than ordinary care, he increased
the speed of his train, and was running to make up time.

When he approached the switch an engine and train were
working upon the side track, so close to the switch that it was
enveloped by the smoke and steam of the engine. This was
a suspicious circumstance; one calculated to make an engineer
observe special care. Knowing that this engine worked there
constantly, crossing and recrossing the main track and using
the switch, it would suggest at once that the switch had been
recently open.

The signal on the switch would indicate its position, but the plaintiff claims that it was obscured from view by steam and smoke. Under these highly dangerous circumstances, this fact did not prompt Parker to any exercise of care, but on the contrary, he maintained his high rate of speed, and plunged into the cloud of steam and smoke without having a care or thought as to the result.

Approaching, as he was, one of the most dangerous points on the road, a switch constantly in use, with the suspicious circumstance that the engine was working close by it—knowing that there was a signal on the switch which should always indicate its position, but which was now momentarily concealed from view—the plainest dictate of prudence should have prompted him to slacken the speed of his train and put it under control until he could have seen the position of the signal which was constantly displayed for his information. But instead of taking this precaution he dashed along, with his train under such speed that it was beyond his control, and if any of the numerous switches leading out of the track should be wrong, no power could save him from destruction. He was drawing a train load of passengers, whose lives and whose safety were dependent upon his care and skill. His heedlessness would subject them to the peril of their lives, or fearful injury. And yet, with this responsibility, he dashed along with his train beyond control, with the train-load of passengers depending only upon the chances of the track being clear, and the switches in position.

It has been decided in numerous cases that a high rate of speed upon a dangerous track was such negligence on the part of the engineer as to render the railway company liable to third persons injured in consequence, and such contributory negligence as would prevent a recovery by the engineer himself, if injured. I. C. R. R. Co. v. Patterson, 69 Ill. 650; Same case, 93 Ill. 290; I. C. R. R. Co. v. Jewell, 46 Ill. 99; C., R. I. & P. R. R. Co. v. McAra, 52 Ill. 296; Sweeney v. M. & St. L. Ry. Co., 33 Minn. 153; Mantel v. C., M. & St. P. Ry. Co., 33 Minn. 62; N. C. R. R. Co. v. Messino, 1 Sneed (Tenn.), 220.

Messrs. JOHN McGAFFEY and JOHN T. RICHARDS, for appellee.

GARY, J.   This was an action by the appellee under the statute, for damages for the death of John C. Parker.   He was a locomotive engineer, employed by the Rock Island Company, who used, jointly with the appellants, the tracks between Chicago and Englewood, a distance of between six and seven miles.   November 7, 1883, he was bringing a train of eleven cars into Chicago, and at about 4:30 P. M., being two hours late, his locomotive ran through an open switch, which led to a side track of the appellants, to which a locomotive of the appellants had passed, leaving the switch open.

This locomotive was standing on this side track, and there was evidence that smoke and steam from it obscured the target of the switch so that the deceased could not see the target, nor could he see that the rails of the switch were misplaced until too late to stop, and the result was a collision in which he was killed.   He was running, as the jury have found in answer to a question, at the rate of fourteen to eighteen miles an hour, and the ordinance of the town of Lake, where the accident occurred, prohibited a speed exceeding twelve miles an hour.   There was evidence that the two companies had a joint time table between Chicago and Englewood, but it was not put in evidence, the appellants objecting to its admission, but from the testimony the time allowed to make the distance seems to have been from twenty to twenty-eight minutes.

The appellants put in evidence joint rules of the companies printed on that time card as follows:

"1.   *Passenger trains must not be delayed.*   Engineers and conductors of freight trains, and men in charge of yard trains, must not pull out on main track in advance of a passenger train due or in sight; and, in the event of their occupation of the main track, when passenger trains are delayed, must, on the appearance of passenger train, run to the nearest siding, or, if necessary, cross over to the other main track, properly protecting their trains in all cases.

2.   Inasmuch as trains are liable, at all hours, to be entering the yards or sidings at reduced speed, engineers and conductors running trains or engines between Chicago and Englewood, when the view is from any cause obscured, *must so control their trains or engines as to be able to stop within the range of their vision.*  But nothing in this will be held as an excuse for the failure to display proper signals, when trains or engines are held on the main track, and men in charge of trains or engines, when in danger of being overtaken by another train, must protect themselves by flags, lamps and torpedoes, promptly, to avoid all possibility of being run into.

3.   Delayed trains, between Englewood and Chicago, must run with great caution, and at all times under full control.

4.   Conductors will supply themselves with the time tables of the C., M. & St. P. Ry. and with joint time card of L. S. & M. S. and C., R. I. & P. trains, between Chicago and Englewood.   Also with bridge time table, between Rock Island and Davenport.

5.   All trains will approach stations with reduced speed and with care.

6.   On approaching bridges, switches and passing road crossings, the greatest care must be taken.

7.   A strict and faithful observance of foregoing regulations, it is believed, will enable the conductors to so govern their trains as to avoid danger or accident, as far as circumstances can be foreseen and avoided.   It is therefore vastly important that, when understood, they be observed and enforced.   It is earnestly hoped that this notice is all that may be necessary to insure a prompt and willing obedience to rules, as the consequences, whether good or bad, must, in a great measure, rest upon those who have the immediate charge of the trains."

The argument of the appellants in this court is all upon facts; either as to what the jury should have done, or what instructions the court should have given as to acts or omissions constituting negligence on the part of the deceased. That argument consists of two parts : First, that the deceased was violating an ordinance as to speed, and therefore there could be no recovery; second, that he was violating the foregoing rules, with the same consequence.

As the appellants kept the time table out of the case, the jury were justified in taking the time at the shortest testified to by any witness; but if the longest was taken, then twenty-eight minutes for six miles and a half, with three stops to make, required a speed not less than the jury found that the train was going.

Shall the appellants, by rules, require the speed, and then object that obedience to the rule was negligence? It is difficult to discuss such a question without using language inappropriate to a judicial deliverance. The defendants are estopped by their own conduct.

The deceased came to his death not by any act of his own which would have contributed to it, if the appellants had not violated their own rules, but by a peril which they put in his way, and of which he had no warning. If, in compliance with the first of the above rules, the appellants had properly protected their locomotive on the side track, the switch would have been in place, and Parker in safety. If he knew that rule, and saw the locomotive standing there, the presence of the locomotive was to him a representation by the appellants, that the switch was in place for the main track; whether the smoke from the locomotive obscuring the target ought to have caused him to doubt the truth of that representation and slow up, was a question for the jury, to which the answer would always, and ought to be, adverse to the appellants; and besides, the record shows that there were a great many switches between Chicago and Englewood; it does not show that the deceased, or any other engineer, would remember the location of each target. The presence on the side track, of the locomotive, was no indication of the place at which the switch was, that connected the main and side tracks; and if the deceased did not remember that a target stood where the smoke then was, he would not naturally expect to find one under the cover of that smoke.

It is not the duty of this court to go over a multitude of instructions and answer arguments as to each, when upon a special question the jury have found that the target was obscured by smoke, and that smoke came from a locomotive

of the appellants, the mere presence of which was a representation that the target, if it could be seen, showed the main line to be open. The judgment must be affirmed.

*Judgment affirmed.*

JUDGE GARNETT takes no part in this decision.