Chicago & Western Indiana Railroad Company and the Belt Railway Company of Chicago, v. Edmund A. Flynn.

1. RAILROADS—*Negligence of Servants.*—An engineer of a train on the main track was signaled, with a lantern, to go ahead, by a brake-

man on the rear end of a train which had just entered upon a switch for the purpose of letting him go by. It was the duty of the brakeman to close the switch, but failing to do so the engineer came on rapidly. Upon discovering the open switch he jumped from his engine. Some of the cars were derailed, and falling upon him, permanently injured him. The railroad company was held liable.

2. FELLOW-SERVANTS—*Engineer and Brakeman on Another Train.*— An engineer in charge of a locomotive engine is not the fellow-servant of a brakeman on the rear end of another train on a side track signaling the engineer to go ahead.

3. FELLOW-SERVANTS—*The General Rule.*—The rule that a servant can not recover against the common master for injuries resulting from negligence of a fellow-servant, implies necessarily that they are fellow-servants at the time of the negligent act.

**Memorandum.**—Action for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the March term, 1894, and affirmed. Opinion filed June 4, 1894.

OSBORN & LYNDE, attorneys for appellants.

BARNUM, HUMPHREY & BARNUM, attorneys for appellee.

MR. JUSTICE GARY DELIVERED THE OPINION OF THE COURT.

The appellee was a locomotive engineer in the service of the appellants, and near midnight on the 16th day of March, 1891, was running a train south on the "Belt railway." He had orders to meet a train going north at a place south of the crossing of the Wisconsin Central railway, at which crossing was a semaphore. His right to cross that railway or not was determined by signals from that semaphore. He stopped north of that crossing and saw to the south the movement of the train he was to meet. That train backed south on the main track, pulled in north upon a side track, and then the appellee saw a signal given with a lantern from the rear of that train that the main track was clear, which signal was repeated from the head of the same train, and the semaphore showed a signal to cross the other railway.

The man at the rear of the north bound train, should, when the train was in upon the side track, have set the switch, connecting the side track with the main line so as to make a continuous track of the main line, but he did not.

At the switch was a stand, which should automatically have shown a red light if the switch was not set for continuous track on the main line, and a green or blue light if it was so set; but there was no light in the lamp; and there is much evidence that because of a faulty construction of that stand, a light would not remain burning in the lamp.

There was a rule of the appellants, which the appellee knew, that "a signal imperfectly displayed, or the absence of a signal at a place where a signal is usually shown, must be regarded as a danger signal, and the fact reported to the master of transportation."

There was evidence that this lamp had been so reported, but, as several witnesses testified, the light was very often out, and it was a common practice to run by the switch without regard to the light.

The appellee ran toward the switch at a high speed in order to gain momentum for an ascending grade which he was approaching; saw from his place on the locomotive when he neared the switch that the rails did not make a continuous line, and jumped from the locomotive; cars tumbled upon him and he received very severe and probably lifelong injuries. He sued the appellants, and has recovered $15,000 damages.

On the evidence it is impossible to say that these damages are extravagant, or more than a fair and adequate compensation, and it is useless to go into detail about them.

Two questions are in the case.

First, whether the conduct of the appellee in disregarding the rule of the appellants that the absence of the light "must be regarded as a danger signal," bars the action.

There is no dispute about the facts; he knew the rule, and fully understood its meaning and application to the absence of the light. But by the course of business the man at the rear of the other train was acting by authority of the appellants in giving the signal he did; the signal was the act of the appellants, given by that man to the conductor of that train, and by him repeated to the appellee, and as so repeated, it meant "go ahead."

With the evidence that the light was often out—that it was not at all unusual to run past that switch at night when no light was there—that the defect as to the light was a fault of construction—and with this signal as an act of the appellants to "go ahead," it was a question for the jury whether the appellee was or was not careless, and their verdict stands. L. S. & M. S. v. Parker, 131 Ill. 557, 33 Ill. App. 405, was not a case of master and servant, but still is in point on this question of due care by the appellee. In that case Parker could only infer that the switch was right; here the appellee was, by signs, told that it was right.

The second question is whether the man at the rear of the other train, and the appellee, were fellow-servants. That they had been fellow-servants on some previous occasions, when that man and the appellee had worked in the same crew, seems to be beside the question. Chicago & Alton R. R. v. Kelly, 28 Ill. App. 655.

The rule that a servant can not recover against the common master for injuries resulting from negligence of a fellow-servant implies necessarily that the servants are fellows at the time of the negligence.

Now, in Chicago & Northwestern Ry. v. Snyder, 117 Ill. 376 and 128 Ill. 655, the court in effect decided that it was a question for the jury whether one who operated a semaphore by which the movement of trains was directed, was a fellow-servant with a conductor obeying the signal.

What difference in principle can it make, whether another servant gives the signal which is to be obeyed, from machinery erected for the purpose, or with a lamp, when in either case the signal is for the same purpose, and the two servants do not have, and by their distance from each other can not have, any other communication, and obedience to the signal, in safety, immediately sends the one away from the other?

Nor did the employment of the two servants in like service necessarily constitute them fellow-servants; it was for the jury to decide. Chicago, Burlington & Quincy R. R. v. Fitzgerald, 40 Ill. App. 476.

These views cover all questions in the case. The appellee asked no instructions, and the court gave for the appellants much more favorable ones than this opinion will justify. Happily, the record is such that every question, except the measure of damages, is open for review by the Supreme Court. The judgment is affirmed.

MR. JUSTICE WATERMAN.

I am of the opinion that, in consideration of the great number of human lives whose safety depends upon the exercise of the highest care by locomotive engineers, the willful disregard by such an engineer of a known danger signal, ought to be conclusive evidence of negligence on his part; that public policy demands this; but I am not prepared to say that such is the rule in this State.

MR. PRESIDING JUSTICE SHEPARD.

In my opinion, it was the duty of the appellee, in the presence of the danger signal, to have so run his locomotive as that the train should have been kept within his control until the place of danger had been passed; and, not having done so, he should be barred of a recovery.