## Chicago City Railway Company v. Joseph H. Strong, Administrator.

### Gen. No. 12,802.

1. TRACTION COMPANY—*degree of care required of.* The degree of care required of a traction company is measured by the known or apparent dangers existing.

2. WARNING—*when starting of street car without, negligence.* Where a street car has stopped at an unusual and dangerous place, it is negligence again to start the same without giving a warning to pedestrians intending to cross the tracks, or who were upon the tracks in the act of crossing.

3. VERDICT—*when not excessive.* In this case a verdict of $5,000 is sustained where the action was instituted under the Injuries Act, and the intestate was a boy of the age of six years and five months at the time of his death.

Action on the case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed November 15, 1906.

**Statement by the Court.** This action is prosecuted against appellant for negligently causing the death of appellee's intestate, a small boy of the immature age of six years and five months. A trial in the Superior Court resulted in a verdict of $5,000, upon which judgment was entered after the overruling of the usual motion for a new trial, in an effort to reverse which this appeal is prosecuted, and while we find thirty-two assignments of error upon the record, but two grounds are relied upon and argued by appellant as being sufficient to entitle it to such reversal. These grounds are: First, that the verdict is not justified by the evidence; and, second, that the verdict is excessive.

The deceased on October 10, 1902, the day of sustaining the injuries from which he died, was a school boy returning from the school which he regularly attended, one block east of State street, to his home on LaSalle street about midway between Fifty-second

and Fifty-third streets, and three blocks west of State
street. He must necessarily, in going to his home
from school, cross the car tracks in State street in the
vicinity of the place of the accident. There are double
tracks in this part of State street, upon which cars of
appellant are operated to the north and south, and be-
tween Fifty-second and Fifty-third streets on the east
side of State street was situated a power house, in
which the machinery constituting the propelling power
of the cars was contained. From the north side of
this power house was a switch track curving to the
northeast, connecting with the east or north-bound
main track on State street. Continuing from this
switch track, and between 75 and 100 feet north of the
power house, was a cross-over switch, the north end
being on the east-bound and the south end on the
south-bound of the two main tracks. This situation
made the switching of cars possible from the power
house either to the north or south-bound tracks, and
from those tracks into the power house, and these
switches were so used. At the time of the accident a
train consisting of a trolley car and two box cars
loaded with cinders backed out of the power house by
means of the switches, their destination being a point
south of the power house at Seventy-seventh street
and Vincennes road. These cars stopped on coming
out of the power house before reaching the south-
bound track for the purpose, it would seem, of having
the trolley pole adjusted, which duty the conductor
performed. The deceased was on the sidewalk, or on
a manhole east of the tracks, at the time the cars
stopped, as claimed by appellee, which claim is sup-
ported by proof. There were no conductors or em-
ployes on the cinder cars. The motorman was on the
north end of the trolley car, which was the south car
of the three as it backed out of the power house to the
north. While the cars were stationary the Gordon boy
started to cross in front of the cars in an effort to get

to the west side of State street, when, without any ring-
ing of the bell or the giving of any warning signal, and
immediately upon the replacing of the trolley pole, and
at the verbal direction of the conductor, the motorman
started the train, which struck the deceased, inflicting
injuries which resulted in his death.

It is undisputed that this train was backing out of
the power house going north across the switches for
the purpose of getting upon the south-bound track
preparatory to the making of its intended trip south,
and that at the time of the accident the trolley car was
in the rear of the train and a cinder car to the front,
the latter of which struck the deceased.    Appellant
contends that at the time of the accident the boy was
in front of the train between the rails of the track upon
which the train was standing, attempting to get on or
meddle with the north cinder car, and in a position
from which he could not be seen by any person on the
car, and produced witnesses who gave testimony tend-
ing to substantiate such contention.

WILLIAM J. HYNES, SAMUEL S. PAGE and WATSON J.
FERRY, for appellant; MASON B. STARRING, of counsel.

JAMES C. McSHANE, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the
court.

It is beyond dispute that deceased was of ordinary
intelligence for a boy of his tender years, and that he
was well informed of the environing conditions at the
place of the accident, and had daily crossed at or near
this place during the terms of school for about two
years previous to his death.    It must not be lost sight
of, in weighing the evidence, that the boy was in the
beaten path which led from the school he was attend-
ing to his home, and that it was in the orderly way of
his return to his home after school adjourned for the

afternoon session that he was at the scene which terminated his brief earthly career.

It is said in appellant's brief (p. 8): "We take it that the law is too well settled to be the subject of controversy, that the same degree of care is not demanded in the operation of street cars between intersecting streets as is required at street crossings." If we should give credence to this legal proposition, it is apparently inapplicable to the admitted condition which prevailed at the place of the accident. The legal obligation announced in C. C. Ry. Co. v. Tuohy, 196 Ill. 410, minimizing the degree of care imposed upon those in charge of cars under the conditions existing in that case by parity of reasoning as applied to the conditions at the place of the accident in this case, imposed upon all engaged in the moving of cars to or from the power house the highest degree of care. The degree of care which the law imposes is measured by the known or apparent dangers confronted. The place of this occurrence was fraught with much danger to pedestrians. The cars going into and coming out of this power house when bound south must proceed in a contrary direction in order to gain the track on which south-bound trains are run. This requires care upon the part of pedestrians to avoid collisions with cars while on the switch and proceeding towards the south-bound track, and equally demands upon those operating the cars at such times the greatest vigilance to avoid running down pedestrians who have a legal right there to cross the tracks. It may well be confusing to adult pedestrians coming in contact with cars so operated from this power house, and necessarily more so to those of immature years.

There is satisfactory evidence in this record to rebut the contention that deceased was upon the tracks attempting to get upon the north cinder car or meddle with it, and an abundance of credible testimony sustaining the theory that the deceased was either on the

sidewalk or the manhole east of the tracks and started to cross in front of the train at the time it was not in motion, and was overtaken and crushed by it because of its suddenly being started without notice or warning of any kind to apprise the boy of the intention of those operating the train, after bringing it to a standstill, to again start it. One of more mature years than the boy was might, in the same condition, while in the exercise of ordinary care for his own safety, have been likewise deceived and thereby lured to his own destruction. The jury were justified in giving credence to the testimony of appellee's witnesses, Lomax, Benson and Scott, whose evidence fairly sustains the contentions that when deceased started to cross the tracks he was on the sidewalk or manhole, that the train was not moving, but standing still, that it started without ringing the bell or giving any warning of intention to proceed, and that the train did not commence to move again until after deceased had started on a run to cross the tracks in front of it, and that he was struck down by the north cinder car before he could clear the track. These questions were for the jury, and there being a conflict in the testimony, it was their duty to decide.

It is not disputed that there was no "lookout" on the north cinder car. The position of the motorman rendered him incapable of seeing a person who might be crossing the tracks in front of his train. From the sudden action in starting the car after adjusting the trolley pole by the conductor, it is evident he did not look for pedestrians before giving the word to start. At this dangerous place, taking into consideration the stopping of the train at an unusual place, it was negligence to again start the train without giving a premonitory warning so that pedestrians intending to cross the tracks might stop, or, being on the track in the act of crossing, might have an opportunity to avoid the danger of accident. It was negligence in not having a "lookout" on the north cinder car.

The rule as to what constitutes negligence is defined in P. F. & W. Ry. Co. v. Callaghan, 157 Ill. 406, as being "the omission to do something which a reasonable man, guided by those ordinary considerations which ordinarily regulate human affairs, would do, or the doing of something which a prudent and reasonable man would not do." This rule as applied to this case demanded that before again starting the train sufficient warning should have been given so that persons intending to cross the tracks in front of the train might desist, and those persons who were lured upon the track in an attempt to cross while the train was at a standstill, might have the chance either to pass over or retrace their steps before being overtaken by the train; that the train should not have been again started until those in charge of it had used reasonable diligence to ascertain that the track was clear of pedestrians, and that there was no apparent danger of running into any one, before starting the train.

We are impelled to the conclusion that the deceased started to cross the tracks in front of this train while it was at a standstill, and he had the right to assume it would not again be started until due warning had been given, and that in attempting to so cross deceased was not guilty of contributory negligence, but was in the exercise of due and ordinary care for his own safety for one of his years.

The assessing of damages in this class of cases is not free from difficulty and some uncertainty. It has been decided that such damages cannot be limited by any fixed rules and must be left largely to the sound discretion of the jury. C. & A. Ry. v. Shannon, 43 Ill. 338. The amount of recovery in this case is the maximum allowed by law at the time the boy died. He was an ordinary bright boy, but too young to judge of his final attainments in the "battle of life." He was an American youth and every ambition of life was open to him, and fame and distinction and high place, in this free republic, were not barred to him. The coun-

try's history is replete with names which shine luminous upon the scroll of fame who climbed the giddy heights of prominence and usefulness as the reward of strenuous and patriotic endeavor from as humble a station in life as that to which the deceased was born. What comfort and financial support he might have been to his next of kin we can never know. What sorrow or charge upon them he might have become is equally denied. He who was the tanner's son lived to make that father a post-master and many snug and lucrative offices were bestowed upon many of his kin. Therefore no one may know what actual damage the next of kin have suffered, and there being no class distinction or advantage of heredity here, all are on an equal plane, and the damages must be admeasured within the limitations of the statute, and of necessity what the amount shall be, largely rests in the discretion of the jury. There is nothing in this record affecting the presumption that the deceased had the ordinary expectation of life. He was an ordinary healthy child with the usual bright mental faculties of a boy of his years. This is the concensus of the opinion of appellee's witnesses, who had the advantage of close association with the deceased all his brief career.

It is true that many cases in the earlier history of our courts have held even $3,500 to be excessive for negligently causing the death of a child, and yet there are many later cases where the maximum award has been sustained. In B. & O. S. W. Ry. v. Then, 159 Ill. 535, in discussing the statute the court said: "How this pecuniary damage is to be measured—in other words, what is to be the amount of the verdict—must be largely left—within the limits of the statute—to the discretion of the jury. The legislature has used language which seems to recognize the difficulty of exact measurement and commits the question especially to the finding of the jury."

In U. S. Brewing Co. v. Stoltenberg, 211 Ill. 531, affirming 113 Ill. App. 435, which sustained a $5,000

verdict in the case of a child four and one-half years of age, it was said: ''The final contention of appellant is that the verdict is excessive. The trial was a fair one. We find no reversible error in the admission or in the rejection of testimony. The jury were fully and properly instructed as to the law of the case. The statute by express words commits the question of what is a just and fair compensation to the jury. There is nothing in the record to show that they were influenced by passion or prejudice, or by any other improper motive. The amount found is within the limit of recovery authorized by the statute which creates the cause of action. In this state of the case we are committed to the doctrine that we will not interfere with the verdict upon the sole ground that it is excessive. C. & A. Ry. Co. v. Kelly, 28 Ill. App. 655; West Chicago St. Ry. Co. v. Stoltenberg, 62 Ill. App. 420; Cicero & Proviso St. Ry. Co. v. Boyd, 95 Ill. App. 514. The judgment of the Circuit Court is affirmed.''

And in Cicero & Proviso St. Ry. Co. v. Boyd, 95 Ill. App. 510, wherein an award of $5,000 was upheld for causing the death of a seven year and nine months old boy, the court said: ''It is also said that the judgment is excessive, but we are unable to say this is so. Numerous cases are cited on this point, both by appellant and appellee, none of which are, however, controlling, because of the difference in their facts and circumstances from the case at bar. No complaint is made that the trial was other than fair, or that the jury was influenced by any improper motives, and we therefore think, in view of the statute which, in the first instance at least, commits to the jury the question of what is a just and fair compensation in cases of this nature, we should not interfere with the judgment because of its amount.''

In C. & G. W. Ry. Co. v. Root, 106 Ill. App. 164, a $5,000 verdict was sustained in the case of a twelve year old girl; and in I. C. R. R. v. Johnson, 123 Ill.

App. 300, a $5,000 verdict in the case of a twelve year old boy was sustained, and also a similar verdict as to amount in West Chicago Street Ry. Co. v. Stoltenberg, 62 Ill. App. 420, involving the death of a nine year old boy.

We refuse to hold the judgment of $5,000 in this case excessive, relying for this conclusion upon the law announced in the cases last cited, being of the opinion that they are decisive of our duty here.

After a careful perusal of the record we do not find any reversible error, and the judgment of the Superior Court is affirmed.

*Affirmed.*