Wanamaker, J.,
dissenting. What is the value of “a boy six years of age,” of average health and intelligence? Or, fitting the question to this case: Is $4,000 excessive damages for the wrongful tak *400 ing of the life of such a boy, and do such damages warrant this court in reversing the courts below and granting a new trial?
The majority of this court answer this question with a yes. I answer it with a no. This is the only question in the case.
Raymond Bradford, the boy, was struck by an automobile on the 11th day of June, 1917, driven at a high and dangerous rate of speed, and on the wrong side of the street, in violation of numerous ordinances of the city of Cleveland and statutes of the state of Ohio. He died as a result of the injuries on the 15th day of June, 1917, four days later.
No question is made as to the negligence of the automobile driver. No claim is made as to the contributory negligence of the boy. What is his life worth in damages as measured by the law as it is, or as it should be?
The twelve men in the jury box returned a verdict of $5,880. Upon motion for a new trial the trial judge reduced it to $4,000. Error was prosecuted ■to the court of appeals, which examined the record and found as to the $4,000 that it was “excessive”; and also found that “no part of the verdict or judgment was the result of passion or prejudice.” The court of appeals affirmed the judgment below, $4,000, and finding its judgment in conflict with that of another court of appeals certified the case here for review.
The matter of new trials in such cases is concededly regulated by the statutes, especially Section 1157'6, General Code, which so far as pertinent x-eads:
*401 “A former verdict, report, or decision, shall be vacated, and a new trial granted by the trial court on the application of a party aggrieved, for any of the following causes affecting materially his substantial rights: * * *
“4. Excessive damages, appearing to have been given under the influence of passion or prejudice. # # #
“6. That the verdict, report, or decision is not sustained by sufficient evidence, or is contrary to law.”
I hold that the “excessive damages” claimed in this case are comprehended wholly and only under subsection 4, and before excessive damages warrant the granting of a new trial they must be so excessive, must so grossly exceed the demands of justice under the evidence of the case, as to appear to have been given “under the influence of passion or prejudice.”
But the courts below find that the jury’s verdict, and no part thereof, was rendered under the influence of passion or prejudice. Therefore it must follow that this new trial cannot be ordered or justified under above subsection 4 of Section 11576, General Code.
It is sought, however, to justify this reversal and new trial under subsection 6, of Section 11576, heretofore quoted, that the verdict “is not sustained by sufficient evidence.” If subsection 4 were not expressly enumerated in the statutes, the majority’s opinion would be sound. But the express enumeration of subsection 4 specifically excludes it from subsection 6 by all the rules of judicial construction heretofore known and declared.
*402 The old doctrine of expressio unkis est exclusio alterius has been applied too long and too often as a wholesome rule of construction to be so flagrantly disregarded in this case. The expression of this explicit provision concerning excessive damages was for no other purpose than to remove or withdraw that question from subsection 6, for necessarily it involves the weighing of the evidence, determining whether or not there is sufficient evidence to support the verdict.
What are the various elements that a court must consider in determining whether or not the verdict is “sustained by sufficient evidence?” There are four factors which the court may consider in such cases:
1. Where the verdict is for the plaintiff, should it have been, under the evidence, for the defendant?
2. Where the verdict is for the defendant, should it have been, under the evidence, for the plaintiff?
3. Where an amount in damages is allowed, is it under the evidence too much; that is, excessive?
4. Where an amount is allowed, is it too little under the evidence, or inadequate?
Now the effect of this subsection 4, pertaining to excessive damages, was to remove this third factor from the general doctrine announced in subsection 6, “not sustained by sufficient evidence.”
If that be not sound sense, then subsection 4 relating to excessive damages is wholly superfluous,
What the legislature evidently meant was that before excessive damages can justify a reversal or granting of a new trial the verdict must appear “to have been given under the influence of passion or prejudice,” and in this case neither of the lower *403 courts made that finding; and we do not weigh evidence.
It is invariably the rule in such cases that courts charge juries that the amount of damages recoverable has been soundly and wisely left to their judgment and determination; the only exception legally allowable is where a verdict of the jury is so grossly excessive as to be shocking to one’s sense of justice.
This doctrine is clearly, and concisely announced in 13 Cyc., 121:
“The general rule on this point as expressed by Judge Story is ‘that a verdict will not be set aside in a case of. tort for excessive damages, unless the court can clearly see that the jury have committed some very gross and palpable error, or have acted under some improper bias, influence, or prejudice, or have totally mistaken the rules of law, by which the damages are,to be regulated.’ In such cases the court should merely consider whether the verdict is fair and reasonable, and in the exercise of sound discretion, under all the circumstances of the case; and it will be so presumed, unless the verdict is so excessive or outrageous with reference to those circumstances as to demonstrate that the jury have acted against the rules of law or have suffered their passions, their prejudices, or their perverse disregard of justice to mislead them.”
This is the general doctrine prevailing, throughout a great majority of the states. In the United States courts it has been held that the appellate court possessed no revisory powers as to excessive verdicts, but was limited to the inquiry whether the jury were properly directed as to the mode of assessing'dam *404 ages. (Homestake Mining Co. v. Fullerton, 69 Fed. Rep., 923; 16 C. C. A., 545.)
The doctrine of pecuniary damages, financial loss to the estate of the child, is a judge-made doctrine. It is so cold and calculating as to be really bloodless. Awarding pecuniary damages to the next of kin of a child six years of age is merely making a business commodity out of the child, and subjecting the loss of that child’s life to the dollars and cents argument, limited to how much that (child would probably contribute in later years, had he lived, to the father and mother, or brothers and sisters.
A husband may recover for the loss of his wife’s affections and companionship in a suit properly filed for alienation of affection. In an action for breach of promise a party may recover for loss of companionship, affection, and loss of marital prospects, largely speculative; but in a case of the loss of a child many courts have by repeated decisions and dictums held that no matter how great the loss to the parents in affection, companionship, pain and suffering such elements cannot enter into the amount of the verdict.
But, what does it cost as a mere financial investment to grow, develop, nurse and train a boy to the age of six years ? Is $500 a year too much, or, likely, too little, if care, nursing, doctor’s bills, clothing, food and other necessary and incidental expenses be included?
But I protest against this cold-blooded, calculating measure of human life — the wiping out of elements and considerations in valuing the life of children *405 that are admittedly included in the loss of companionship in adults.
Excessive damages have been considered in other courts. In Rice v. Crescent City Rd. Co., 51 La. Ann., 108, $4,000 for a.child 3% years old was .not excessive. In Swan v. Boston Store of Chicago, 177 Ill. App., 349, it was held that $6,000 for a boy five years of age was not excessive. In Chicago City v. Strong, Admr., 129 Ill. App., 511, it was held that a verdict of $5,000 for a boy 6y2 years of age was not excessive. In Houghkirk v. Delaware & H. Canal Co., 28 Hun, 407, a verdict of $5,000 for a girl six years of age was held not excessive. Taylor, B. & H. Ry. Co. v. Warner, 31 S. W. Rep. (Texas), 66, held that a verdict of $5,000 for a boy seven years of age was not excessive. De Amado v. Friedman. 11 Ariz., 56, held that a verdict of $4,800 for a boy 4y2 years old was not excessive. Ahern v. Steele, 48 Hun, 517, held a verdict of $4,800 for a boy six years of age not excessive. Golden v. Spokane & I. E. Rd. Co., 20 Ida., 526, held a verdict of $4,000 for. a boy seven years of age not excessive. And Ortolano v. Morgan’s L. & T. Rd. & S. S. Co., 109 La., 902, held that a verdict of $4,000 for a boy five years old was-not excessive.
I dissent from the judgment in this case for another and stronger reason, and that is that this court by its judgment in this case acts in plain and palpable violation of Section 19a, Article I, Bill of Rights, which reads:
“The amount of damages recoverable by civil action in the courts for death caused by the wrongful act, neglect, or default of another, shall not be limited by law.”
*406 This section was adopted as a part of the Ohio Constitution in 1912. The language, “ shall not he limited by law,” is in itself unlimited; that is, it is broad and comprehensive enough to include all kinds of law, whether made by assumed legislative, executive, or judicial authority.
Suppose the legislature provided in express terms a schedule of limits beyond which juries and courts might not go in the rendering of verdicts or judgments, say $1,000 for infants under four years of age, $4,000 for infants under six years of age, $6,000 for infants under ten years of age, would any lawyer or judge contend that such was not a bold violation of this constitutional provision?
Is it any less a violation of the constitutional provision when such law is put into the judgment of a court? It may be urged that the supervising judgment of a court is necessary to do justice to all parties, but courts now have that power as to excessive damages, where they find that such excessive damages appear “to have been rendered by passion and prejudice.” But if any rational view, of the facts of the case touching the death, the health, intelligence, and reasonable prospects of the child killed, sustain the amount of the verdict, upon what prin- - ciple of law may a court set it aside and order a new trial?
■ This comprehensive language in the Ohio Constitution is further emphasized by the fact that the debates in the constitutional convention develop similar constitutional provisions in a large number of the states of the Union, and it is significant that in those various constitutional provisions appearing in other states the language as a rule is, “no law shall *407 be passed, no statute shall be passed,” in a strict sense indicating that the constitutional provision related to a limitation upon the legislative branch of the government. Here in Ohio it is otherwise. It is a mandate to be observed not only by the legislative branch of the government, but by the judicial branch as well.
Again, I hold that this language wipes out the former limitation of damages to “pecuniary injury,” established by statute and by courts.
When you limit the nature of the damage, you necessarily limit the amount of the damages. You might as well talk about excluding a factor in a mathematical problem without affecting or reducing the sum or product as to talk about reducing the factors and limits that enter into “the amount of damages.”
It is an old truism that what the law may not do directly, it may not accomplish by indirection, however masked, through whatever name, function, or agency.
This boy’s life was negligently and wantonly taken in 1917. The case was begun in the court of common pleas of Cuyahoga county in 1918. We are now near 1923, and this case must be tried all over again. When ultimate justice may be finally done, none may foretell.
I protest against this reversal as contrary to the demands of the law, the constitution, and the dictates of humanity.