THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY

*v.*

RUBY VAN PATTEN, Administratrix, etc.

1.   ERROR *will not always reverse.*   Where the right is so clearly with the successful party that the result would have followed had the jury been properly instructed, the judgment will not be reversed, but where the right of the party is not clear, and there is error in the instructions which may have influenced the jury, a reversal will be had, and the cause remanded.

2.   NEGLIGENCE — *what is, on the part of one killed by a locomotive.* Where a person is riding in a wagon drawn by a team under his control, and is familiar with a railroad crossing, and from the point where the wagon road

turns to cross the track, distant about four rods, an approaching train is plainly visible for a distance sufficient to enable him to check his team before crossing, and he does not look in the direction of the approaching train, but keeps his head averted to an opposite direction, and drives upon the track, where he is killed, he will be guilty of contributory negligence.

3.  SAME — *right of recovery in case of mutual negligence.*   Where a party killed was guilty of contributory negligence, his personal representative cannot recover unless the negligence of the defendant contributing to cause the death, was gross, in comparison with which the negligence of the intestate was slight.

4.  SAME — *presumption as to negligence of plaintiff's intestate.*   In an action against a railway for causing the death of a person through negligence, where the proof clearly shows negligence on the part of the deceased, it is error to instruct the jury that the law presumes that he exercised proper care and caution on the occasion.   If there was no proof of his negligence, such an instruction might be proper.

5.  PRESUMPTION — *not indulged against proofs.*   Where there is clear proof of a fact, no presumptions can be indulged except such as arise upon the proof.

6.  SPECIAL VERDICT — *instructions in respect to.*   If the court exercises its discretion in instructing the jury to find specially in answer to certain interrogatories, its power is exhausted, and it is error to say to them that if they are unable to answer the interrogatories because of the uncertainty of the evidence, they can so report.

APPEAL from the Circuit Court of Peoria county ; the Hon. J. W. COCHRANE, Judge, presiding.

This was an action on the case by Ruby Van Patten, administratrix of the estate of Matthew B. Van Patten, deceased, against the appellant.   The material facts of the case are stated in the opinion of the court.   The jury found for the plaintiff, and assessed her damages at $5,000, upon which judgment was rendered, the court refusing to grant a new trial.

Messrs. McCULLOCH, STEVENS & WILSON, for the appellant.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This case was before us at a former term, and will be found reported in 64 Ill. 512, to which we refer for a statement of the grounds of the action.

The last trial in the court below, like the first, resulted in a verdict and judgment in favor of the plaintiff.

When we can see, from all the evidence, the right is so clearly with the successful party that the same verdict must necessarily have been rendered had the jury been correctly instructed on the law, our practice is to decline to reverse and remand for error in the instructions alone; but when the right of the successful party is not clear, and we are of opinion there is error in the instructions which may have influenced the jury in determining their verdict, there must be a reversal that another jury may pass on the issues under proper instructions.

In the record before us there is evidence showing that the plaintiff's intestate was guilty of negligence contributing to the injury which resulted in his death, and on account of which the suit is brought. He was, at the time, riding in a wagon, drawn by a pair of mules which seem to have been entirely under his control. He was familiar with the crossing, and the train was on regular time. The wagon road on which he was traveling, after running parallel and not far distant from the railroad track, turns, at a point about four rods distant from the track, and crosses it nearly at right angles. At and from the point where the wagon road turns to cross the railroad track, a train can be plainly seen for a distance sufficient to enable a person to check an ordinary team before passing on the track. The intestate did not look in the direction from which the train was coming, but kept his head averted, looking in an opposite direction, apparently at some persons who were driving hogs, and, without checking or attempting to check his team, and thus drove on the track and was struck by the advancing engine. So far as we have been able to discover, there was no controversy in this respect. His conduct, therefore, was clearly and unquestionably negligent. *Ch. & A. R. R. Co.* v. *Jacobs*, 63 Ill. 178; *St. L. A. & T. H. R. R. Co.* v. *Manly*, 58 id. 300; *T. W. & W. R. R. Co.* v. *Jones*, 76 id. 311; *C. B. & Q. R. R. Co.* v. *Lee, Admx.*, 68 id. 576. The only question, then, was whether the defendant was guilty of a de-

gree of negligence in comparison with which this negligence of the intestate was slight. This was to be determined from the evidence alone. There was no room to indulge in presumptions of what the intestate did or did not do, for his acts were clearly and fully in proof before the jury. Nevertheless, the court, by the fifth instruction given at the instance of the plaintiff, told the jury:

"The law presumes the deceased, in approaching the mill crossing, exercised proper care and prudence; and, unless the jury believe from the evidence that the deceased did not exercise care and prudence in approaching said crossing, he cannot be regarded as guilty of negligence."

It may be, if there had been simply evidence of the defendant's negligence resulting in the injury complained of, and no evidence of what the intestate's conduct was, this instruction would have been unobjectionable. But in view of the evidence as it was, the tendency of the instruction was to mislead, and we doubt not it did mislead the jury. They must have understood it applied to the evidence before them, and, notwithstanding there was clear proof of the plaintiff's negligence, still it must be considered with reference to the legal presumption that he was not negligent. When there is clear and incontestable proof of a fact, no presumptions can be indulged except such as arise from the proof. How much, or whether any evidence was sufficient, in the estimation of the jury, to overcome this legal presumption that the intestate was not negligent, under the peculiar form of the instruction, can, of course, only be conjectured. It may, however, be inferred, from their finding, that the presumption was of controlling importance, for it is difficult otherwise to reconcile the verdict with the evidence.

The instruction should have been refused, and the giving of it was error.

The defendant requested, and the court instructed the jury to find specially, in answer to the following interrogatories:

"*Int.* 1. In what particulars were the servants of the defend-

ant guilty of negligence in causing the death of Matthew B. Van Patten?

" *Int.* 2. At what rate of speed was the train which caused the death of said Matthew B. Van Patten moving at the time of the accident?

" *Int.* 3.. Could the said Matthew B. Van Patten, from his position on the road at the point where the same turns out of the public road westward to the place of the accident as indicated on the map shown in the evidence, and from that point until he reached the railroad track, have seen the approaching train; if so, for what distance could he have so seen the same?

" *Int.* 4. Did the said Matthew B. Van Patten at any time before the accident occurred, and while the train that caused his death was within sight, look in the direction of said train as it approached; if so, at what point did he so look?"

The court then, of its own motion, and against the defendants' objection, remarked to the jury that if they were unable to render a special verdict in answer to the interrogatories, because of the uncertainty of the evidence, they could so report in the way of a special verdict.

The jury, with their general verdict, returned the following special verdict:

" *First.* We, the jury, find the greatest negligence on the part of the defendant's servants, in causing the death of Matthew B. Van Patten.

" *Second.* In not giving the proper signals.

" *Third.* In running at an unusual rate of speed."

The defendant objected to receiving the verdict, but the court overruled the objection and gave judgment on the general verdict, for the plaintiff.

It was provided by the fifty-first section of the Practice act, in force July 1, 1872, " The court may, at the request of either party, require the jury to render a special verdict upon any fact or facts in issue in the cause, which verdict shall be entered of record," etc. When the special finding of fact is inconsistent

with the general verdict, the former shall control the latter, and the court shall give judgment accordingly.

When the court exercised its discretion and instructed the jury to find specially in answer to the interrogatories, we think its power in that respect was exhausted, and that it was then the duty of the jury to obey the instruction. By subsequently informing them that if they were unable to answer the interrogatories, because of the uncertainty of the evidence, they might so report, etc., the jury were made to understand that, in the opinion of the court, there was uncertainty in the evidence upon the points presented by the interrogatories, and, also, that, although the evidence was too uncertain to enable them to specifically answer the interrogatories, they might, nevertheless, be able to return a general verdict. We think the tendency of this was to mislead the jury. The interrogatories embrace the vital issues in the case. Unless the jury were able to find that the answers to them were unfavorable to the defendant, their verdict should have been for the defendant. If no instruction to find specially in answer to these interrogatories had been given, it would still have been the duty of the jury to have believed from the evidence, before they returned a verdict for the plaintiff, that the defendant was guilty of negligence which caused the injury to the intestate; that the intestate was not guilty of contributive negligence, or, if guilty of such negligence, that it was slight and that of the defendant gross when compared with each other. It is idle to say a jury might intelligently return a general finding embracing these issues, and yet, by reason of the uncertainty of the evidence, not be able to answer the interrogatories.

The special findings, both in omitting to make answer in reference to the negligence of the intestate, and in their phraseology, show that the jury acted upon an incorrect understanding of the law applicable to the case. They find *the defendant was guilty of the greatest negligence* in causing the intestate's death, in not giving the proper signal, and in running at an unusual rate of speed. This was not sufficient to

authorize the general verdict. If the comparison was with reference to other acts of the defendant, supposed to be negligent, it was immaterial. If it was with reference to the conduct of the intestate, as is most reasonable to infer, then it afforded no basis for the judgment, since we have frequently held the mere fact that the defendant's negligence is greater than that of the injured party, when he is guilty of contributive negligence, does not authorize a recovery.

The judgment is reversed and the cause remanded.

*Judgment reversed.*