## Patrick H. O'Donnell, Admr., v. The Armour Curled Hair Works, et al.

### Gen. No. 10,934.

1. ASSUMED RISKS—*what are.*   Where a person is employed in a business in which inflammable material is used and with which he engages to work, the fact that such material is of a character easily ignited and such as will rapidly burn, and the fact, also, that the building in which such business is carried on may accidentally catch fire, constitute risks assumed by such person upon the acceptance of such employment.

2. INSTRUCTIONS—*must relate to issues.*   An instruction asked by the plaintiff is properly refused where it advances a theory of recovery not predicated upon any averments in the declaration.

3. INSTRUCTIONS—*when plaintiff may recover.*   An instruction which tells the jury that they may find for the plaintiff if the evidence preponderates in his favor " though but slightly," is subject to the criticism that it is calculated to impress the jury that the court inclines in favor of the plaintiff.

4. HARMLESS ERROR—*when giving of erroneous instruction constitutes.*   Where from the evidence the jury would not reasonably have been justified in finding for the plaintiff, the giving of an erroneous instruction upon behalf of the defendant is a mere harmless error which will not reverse.

Action on the case for personal injuries.   Error to the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding.   Heard in this court at the March term, 1903.   Affirmed.   Opinion filed December 21, 1903.

THEODORE G. CASE and JOHN T. MURRAY, for plaintiff in error; A. W. BROWNE, of counsel.

A. R. URION and A. F. REICHMANN, for defendants in error.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

Plaintiff in error, as administrator of the estate of Max Schmidt, deceased, sued defendants in error in case for alleged negligence causing the death of his intestate. The jury found the defendants not guilty and judgment was rendered against the plaintiff, from which judgment this appeal is taken.

Defendants were the owners of a brick building at the southeast corner of Thirty-first and Benton streets, in the city of Chicago, about five stories in height, which was used, as appears from the record, for the manufacturing and pressing of curled hair and other materials. The deceased had been in the employ of the defendants about five months, his place of work being at the southwest corner of the third floor of the building. The third floor was $216\frac{1}{2}$ feet long from east to west and $108\frac{1}{2}$ feet in width from north to south. There were two stairways in the building similarly constructed, one at the northwest and the other at the southeast corner of the building. The stairs were from five to eight feet in width, and were enclosed in shafts about ten feet wide. On each floor there were iron doors leading to the floor from the stairway shafts. There were four fire escapes, two in the north and two in the south wall of the building, which extended from the top of the building to the ground, with balconies on each floor. A fire happened in the building, commencing at the southeast corner thereof, between 12:30 and 2 o'clock in the daytime, March 27, 1899. Plaintiff's intestate was on the third floor when the fire broke out. Subsequently, his body was found at the bottom of the shaft of the northwest stairway. The declaration consists of three counts. The negligence averred in the different counts is as follows: first count, "And the defendant then and there well knowing the dangerous char-

acter of said building and the inflammability thereof and the inflammability and likelihood of the said curled hair and other materials therein to easily ignite and rapidly burn, carelessly, negligently, wrongfully and improperly permitted the means of egress and escape from said room or compartment to be in an unreasonable and unreasonably unsafe condition in case of fire, and the doors and windows of the said room or compartment and the passageways therefrom to be obstructed and blocked up and rendered inaccessible by placing or permitting to be placed and remain divers large quantities of curled hair and other materials about and against and before the said windows, doorways and passageways and other means of egress from said room or compartment in such manner as to hinder or prevent egress or escape therefrom," etc.; second count: "Defendants well knowing the dangerous character of said building and the inflammability thereof and the inflammability and likelihood of the said curled hair and other materials therein to easily ignite and rapidly burn, carelessly, negligently, wrongfully and improperly permitted the means of egress and escape from said room or compartment to be in an unreasonable and unreasonably unsafe condition in case of fire and the doors and windows of the said room or compartment and the passageways therefrom to be obstructed and blocked up and rendered inaccessible by placing or permitting to be placed and remain divers large quantities of curled hair and other materials about and against and before the said windows, doorways and passageways and other means of egress from said room or compartment in such manner as to hinder or prevent egress or escape therefrom," etc.    The third count sets out the following ordinance of the city of Chicago, and avers as follows: "It shall be unlawful, under any circumstances, to close up or obstruct, during the occupation for business purposes, of any building, the stairs or fire escapes or the approaches leading there, and no change in the position or construction of either shall be made, unless the permission so to do of the building department first shall have been obtained." "And the plaintiff avers that the said Armour Curled Hair Works,

and the said Phillip D. Armour and Jonathan O. Armour, and Phillip D. Armour, Jr., doing business as Armour & Co., negligently, carelessly and wrongfully failed to comply with the provisions of said ordinance in that they negligently and wrongfully permitted the said stairs and fire escapes in and about said building and the approaches leading thereto, while said building was being occupied for the business purposes aforesaid, to be and remain closed up and obstructed, and a fire then and there suddenly broke out, and by means of the premises," etc.

We understand counsel for plaintiff to rely for reversal on the ground that the verdict is against the weight of the evidence, and that the court erred in refusing to give certain instructions asked by the plaintiff, and in giving certain instructions asked by the defendants. Counsel for plaintiff do not refer to the evidence in detail, or specifically, saying:

" To make any attempt to recapitulate or set out, in this brief, the evidence, would virtually amount to an insertion of nearly all of the abstract."

We appreciate the difficulty thus suggested by counsel, and will refer to the evidence as briefly as may be. Plaintiff called only four witnesses as to the condition and surroundings of the third floor before and at the time the fire was discovered. The place of work of two of these witnesses was on the second floor of the building, one on the fifth floor, and one on the third floor. They testified, generally, to the presence of material such as wool, cotton and hair, on the floor, some in bales and some in bins; but no one of them testified that there was on the floor any obstruction sufficient to prevent one exercising ordinary care from escaping from the floor after the fire was discovered, by the means of escape provided by the defendants, namely, the fire escapes and stairways. Nor could any one of them have truly so testified, in view of the uncontrovertible fact that of thirty persons employed on the third floor at the time of the fire, twenty-eight escaped safely.

Ada Flanagan, whose brother worked next to the de-

ceased on the third floor, called by plaintiff, testified that she worked on the second floor; that, between 12:30 and 1:00 o'clock, she went up to the third floor by the northwest stairway; that the machine at which her brother worked was about fifty feet south from the stairway, and that she could walk from the stairway straight down to where her brother was working.

Eddie Stiles, the only one of plaintiff's witnesses whose place of work was on the third floor, while he was evidently inclined to support the plaintiff's case as far as he could, testified that after he discovered the fire in the southeast corner, he went down to the second floor, assisted some young fellows in tying hose up to the third floor, stood on the third floor awhile, and then went down by the northwest stairway and onto the street.

The defendants called seven witnesses, all of whom, except one, were employed on the third floor of the building, at the time of the fire, and the one who was not so employed testified that it was his duty to go to the third floor twice each day to see every one there and take his time; to take care of accidents, and to see if there was anything out of order, and that he was on that floor about ten o'clock in the morning of the day of the fire. This witness, Lauerman, testified, among other things, as follows:

"There was a fire hose right inside of the doorway on each floor connected with standpipes; the length of the hose on each stair shaft on each floor was about 100 feet, that would make 200 to a floor; with regard to the fire escapes there was a standpipe right to the roof; from each floor there was a pipe projected on each floor to make water connections, and then there were regular ladder fire escapes, such as you see on buildings through the city; there was a window to each fire escape, and painted red with six inch letters Fire Escape, showing distinctly where the fire escapes were; they were lettered on the brick wall over the window; there were balconies on each floor to the fire escapes of a foot and a half to three feet."

He also testified that in the west wall, at its extreme north end, on the ground floor, there was a door used by the employees in coming to and going from their work.

O'Donnell v. Armour Curled Hair Works.

Without referring in detail to the evidence of the defendants' witnesses, it is sufficient to say that their evidence shows conclusively, as we think, that there was no obstruction on the third floor which could have prevented any one exercising ordinary care for his own safety from escaping from that floor, by the means provided by the defendants, after the fire was discovered, and that there was ample time to thus escape. Lauerman, defendants' timekeeper, testified that there were, at the time of the fire, thirty persons on the third floor, two of whom were women, and that they all escaped safely except plaintiff's intestate and one Flanagan. But this is not all. The evidence is that the building was destroyed by the fire, and that the upper part, or some of it, fell in. Four or five days after the fire, the bodies of Schmidt and Flanagan were found in a closet in the northwest corner of the shaft of the northwest stairway. The bodies had to be dug out. Neither of the bodies was burned. This indicates, and other evidence tends to prove, that Schmidt reached the northwest stairway, and went down that way, which, of course, he could not have done had the way been so obstructed as to prevent access to the stairway. Having read and re-read the evidence and considered it carefully, as the importance of the case demands, we can come to no other conclusion than that the jury would not have been warranted by the evidence in finding that defendants were negligent as charged in the declaration, and could not reasonably have so found. The evidence tends to shows that the deceased imprudently tarried too long on the third floor after the fire was discovered, and, when he finally attempted to escape, he probably was so exhausted by the heat, or blinded by the smoke, that he failed to make his way to the street from the bottom of the stairway shaft.

Charles A. Raymond testified that Schmidt worked in his department on the third floor; that when the alarm sounded, he, with Schmidt, Gilson and Lee, got hold of the fire hose; that the fire got too hot for witness, and Gilson, the fire marshal, told him to drop the hose, which he did,

and went down the northwest stairway. He says the last he saw of Schmidt he was holding the hose about fifteen feet distant from the fire. Skidmore, foreman of the third floor, testified that the last he saw of Schmidt he had hold of the hose toward the fire near the middle of the third floor; that Flanagan was with him, and that witness told them to throw the hose away and get out; that the fire had got the best of them and there was no use staying; and that they dropped the hose and left, and went towards the northwest stairway, and, subsequently, witness himself went down the northwest stairway, sliding down the banister, and got out of the building.

Counsel, in argument, lay much stress on the inflammable character of the material on the third floor—cotton, wool and hair. It sufficiently appears from the evidence that it was the defendants' business to work such material; that the employees on the third floor, including the deceased, were employed to work with such material, and that it was necessary in the defendants' business to have the material on the floor. The fact that the material was of such nature as to catch fire quickly and burn rapidly, and that the building might accidentally catch fire, were risks which the employees assumed when they engaged to work with the material.

The court was asked by counsel for the plaintiff to give, and refused to give, the following instructions :

" It was the duty of the defendant in this case to have used ordinary care and prudence in furnishing to the deceased plaintiff at the time of the accident a reasonably safe place in which to work, and to have used all reasonable precautions to maintain and keep such place in a reasonably safe condition."

" The court instructs the jury that while as a matter of law the burden of proof is upon the plaintiff and it is for him to prove his case by a preponderance of the evidence, still if the jury find that the evidence bearing upon the plaintiff's case preponderates in his favor, although but slightly, it would be sufficient for the jury to find the issues in his favor."

The instruction first quoted was properly refused. If

given, it might have misled the jury.    The instruction is
not warranted by the declaration, the negligence therein
averred being obstruction of the ways leading to the means
of egress from the floor and building.    It is true that in
Taylor v. Felsing, 164 Ill. 332, the other instruction was
before the court, and that the court declined to reverse be-
cause of it; but the court seems to have passed solely on
the objection of counsel to the instruction, which was that
it permitted the plaintiff to recover on a mere preponder-
ance of evidence, while, as counsel insisted, the law required
the plaintiff to prove his case by a *clear* preponderance of
the evidence.    The court answered this objection by say-
ing, " The law only requires that a preponderance of the
evidence should be in favor of the plaintiff."

We think the other instruction obnoxious to criticism, in
the use of the words " though but slightly."    These words,
we think, calculated to impress the jury that the court
inclines in favor of the plaintiff.    We do not think the
court erred in refusing the instruction as asked.    We do
not approve of the two instructions for the defendants of
which plaintiff's counsel complain; but inasmuch as no
other verdict than that of the jury could reasonably have
been returned, the giving of the instructions is not reversi-
ble error.

In Newkirk v. Cone, 18 Ill. 449, 454, the court say :

" Evidently, substantial justice has been done between
these parties, and the defendant has no just cause of com-
plaint.    And in such case this court will not reverse a judg-
ment, even if errors have been committed by the court
below upon the trial, in the admission or exclusion of evi-
dence, or in the giving or refusing instructions."

In Elam v. Badger, 23 Ill. 498, 502, the court say :

" We have repeatedly said that although the court may
have refused proper instructions, or given improper ones,
yet if the record shows that substantial justice has been
done, a verdict ought not to be disturbed."    See, also, to
the same effect, C., B. & Q. R. R. Co. v. Van Patten, 74
Ill. 91; Smith v. Binder, 75 Ill. 492; Stevison v. Earnest,
80 Ill. 513, 520.

The judgment will be affirmed.                    *Affirmed.*