## Chicago & Eastern Illinois Railroad Company v. Henry Ades Fowler, Adminstrator.

### Gen. No. 13,581.

1. VERDICT—*when in action by death caused by alleged wrongful act cannot be held excessive.* There is no criterion, except the limit of·recovery authorized by the statute, by which the courts can judge of the excessiveness of a verdict for the death of a boy, mentally and physically healthy, with his life before him.

2. PEREMPTORY INSTRUCTION—*what does not justify giving of.* A peremptory instruction should not be given even if the greater weight of the evidence does not sustain the allegations of the plaintiff's declaration.

3. INSTRUCTION—*upon measure of damages in action for death caused by alleged wrongful act, approved.* An instruction upon this subject as follows is approved:

"If you find a verdict in favor of the plaintiff, you are not confined in assessing the damages to the pecuniary value, if any, of the services of the deceased child to his next of kin until he would have arrived at the age of twenty-one, but the jury may consider the · pecuniary benefit, if any, which the next of kin might have derived from said deceased at any age of his life, had he not been killed."

4. INSTRUCTION—*when upon preponderance of evidence not erroneous.* An instruction upon this subject is not erroneous which tells the jury that if they believe the evidence bearing upon the

plaintiff's case preponderated in his favor *although but slightly*, it would be sufficient to warrant a verdict in his favor.

5. INSTRUCTION—*when upon contributory negligence, not erroneous*. An instruction upon the subject of contributory negligence given in an action brought for death of a minor caused by alleged wrongful act is not erroneous which omits the word "experience."

Action in case for death caused by alleged wrongful act. Appeal from the City Court of Chicago Heights; the Hon. HOMER ABBOTT, Judge, presiding. Heard in this court at the March term, 1907. Affirmed. Opinion filed January 13, 1908.

**Statement by the Court.** This is an appeal from a judgment of the City Court of Chicago Heights against the appellant, defendant there, and in favor of the appellee, plaintiff there, for $4,500 for causing the death of the plaintiff's intestate. The judgment was given on the verdict of a jury after a motion for a new trial and a motion in arrest of judgment had been overruled.

The assignments of error in this court which are argued attack the refusal of the trial court to take the case from the jury by peremptory instruction, and its refusal to grant a new trial because of the excessiveness of the verdict, and alleged that incorrect instructions were given and correct ones were refused. Six instructions given at the request of the plaintiff are by the assignments of error alleged to be erroneous, and the refusal of each of five tendered by the defendant is said to be also erroneous. But the argument is confined to four of those given and two of those refused. They will be discussed in the opinion following.

The pleadings in the case consist of a declaration in four counts, and the plea of the general issue thereto. The first count of the declaration alleges that on February 1, 1906, at the city of Chicago Heights, in Cook county, the defendant was operating a steam railway, and by its servants driving a locomotive engine and cars along said railway and a certain public highway known as Twenty-sixth street, and while the

plaintiff's intestate was in the exercise of ordinary care for his own safety, and was rightfully on said highway, the defendant, through the carelessness and negligence of its servants, "so carelessly, recklessly and unskillfully managed the said locomotive engine and cars thereto attached that the same ran and struck with great force and violence upon and against the said Cordie L. Wall, whereby he was then and there killed."

The proper averments of kinship of the beneficiaries of the action and the official character of the plaintiff follow.

The second count alleges the negligence of the defendant to have been that it operated a railroad and drove a locomotive engine across Twenty-sixth street in the city of Chicago Heights, and that, "in so doing no steam whistle placed on said locomotive was sounded at a distance of at least eighty rods and continuously sounded until said crossing was reached, nor was any bell of at least thirty pounds' weight rung continuously from such distance until the crossing was passed, but therein the defendant wholly failed and made default, contrary to the form of the statute in such case made and provided."

The third count alleges that the negligence of the defendant caused the view of the approaching train to be obstructed by allowing and permitting a large number of freight cars to stand along and upon the south side of the Twenty-sixth street crossing close to the railroad track upon which the locomotive was approaching from the south, whereby the said Cordie L. Wall was hindered and prevented from seeing, hearing or knowing of the approach of said train.

The fourth count alleges that while Wall, in the exercise of ordinary care for his own safety, was rightfully on the highway, the defendant company negligently caused and permitted a large number of freight cars to stand close to and upon the south side of Twenty sixth street, which obstructed the view and pre-

vented Wall from seeing or knowing of the approach of a train which the defendant was driving northward at the crossing, and yet, knowing that the crossing was obstructed, the defendant negligently drove said train "along in a northerly direction along and upon the south-bound track close to the said cars which obstructed the view of the approaching train, and that by reason and in consequence of said negligence, the locomotive ran down Wall and killed him."

CALHOUN, LYFORD & SHEEAN, for appellant; E. H. SENEFF, of counsel.

B. J. WELLMAN, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

It is urged with some insistence under the first point of appellant's brief that this case should have been taken from the jury because, "the greater weight of the evidence did not sustain the allegations of negligence contained in the plaintiff's declaration, but on the contrary showed negligence on the part of plaintiff's intestate, causing his death."

If the premise were correct, and if the greater weight of the evidence had been in effect as appellant states it, the conclusion would not follow. This would not have justified the court in taking the case from the jury by a peremptory instruction. It has been held repeatedly that the true rule concerning such peremptory instructions is, that to justify them there must be an entire want of evidence tending to support a verdict for the plaintiff.

Woodman v. Illinois Trust & Savings Bank, 211 Ill. 578, contains a full discussion of this matter, with quotations from previous cases in point.

It can hardly be seriously claimed in this case that there is no evidence tending to support a verdict for the plaintiff. We have, however, in this court in such

cases the duty to weigh the evidence and if it clearly
and manifestly preponderates for the defendant, so
that we can say that the verdict is against the evi-
dence, it may become our duty to reverse a judgment
rendered on a verdict, not because the jury should
have been peremptorily instructed, but because the
trial court should have set aside the verdict and
granted a new trial.

This is not, however, a case in which this seems to
us to be our duty. In our opinion, both the question
of the alleged negligence of the defendant and of the
alleged contributory negligence of the plaintiff were
proper ones for the jury on the evidence, under proper
instructions, and its decision on them was not, in con-
sideration of the evidence, unreasonable or strange.

The facts briefly stated were these: Cordie L. Wall
was a boy twelve years old at the time of his death.
He was a boy of good habits and character and mental
ability. He lived with his parents in the first house
east of the tracks on Twenty-sixth street, in the city
of Chicago Heights. The tracks in question were the
tracks of the defendant, the Chicago & Eastern Illi-
nois Railroad Company. There were six of them
crossing Twenty-sixth street and running north and
south. Twenty-sixth street runs east and west.

On February 1, 1906, between eight and nine o'clock
in the morning, Wall was walking east on Twenty-
sixth street, and had crossed the first, second and
third tracks, counting from the west, when he was
struck by a train of three box freight cars and an
engine backing down the fourth track, and killed.

The engine was headed south and was south of the
cars, but the whole train was running or backing
northward, and the boy was struck first by the last
or northerly car, and knocked down, and the cars and
engine passed over his body two car lengths to the
north.

The first, second and third tracks were switch and
storage tracks; the fourth track, on which the boy was

killed, was the main *south-bound* track of the defendant, although this cut of cars and engines was then running north on it. The next or fifth track was the main north-bound track of the defendant. The sixth or most easterly track was a switch track. There was a sidewalk on the south side of Twenty-sixth street, west of the tracks, but it did not cross the tracks. A sixteen foot plank roadway was laid in the middle of the street. The street was sixty feet wide. The boy was struck at or near the north line of the planking. There were cars standing on the north of Twenty-sixth street on the three west tracks, even with the north line of the street. On the south half of the street there were cars standing on all three of these tracks, and a line of cars extended south from them for a considerable distance, at least four or five hundred feet. On the westernmost track it would appear the cars stood even with the south line of the plank crossing; on the next or second track, the line of cars extended for some little distance onto the planks; and on the third track, the one next to the main south-bound track on which the boy was killed, they extended to the very middle of the plank roadway; the most northerly car on that track, and indeed all of the cars standing on the street, were box cars. The six tracks were all on a hundred foot right of way of the defendant, and the distance between the east rail of one track and the west rail of another was between eight and ten feet. The tracks were standard gauge, four feet eight and one-half inches. Box cars extend over the rails on which they stand for some distance on each side.

The boy, when struck by this train moving northward, was on a "dog trot," and his head was turned northward or northeast, which was the way he would naturally look for a train approaching on the main south-bound track.

There was positive testimony of a disinterested witness, employed by another railroad, who saw the ac-

cident, that there was no whistle sounded and no bell ringing on the train that ran the boy down, before the accident, and there was testimony of other witnesses strongly tending to confirm this. This was denied by still other witnesses, who swore a bell was ringing, but the question was for the jury.

So too was the speed at which the train was moving. Two witnesses at least fixed it at ten miles an hour. Others said it was not running more than three to five miles an hour. It is extremely difficult to gauge the speed of a running train at a transient glance. It was for the jury to say who did it most successfully and testified most accurately, if they deemed the speed of the train an essential factor in the determination of the cause.

In any event it was also for them to say whether the position in which the defendant had placed the cars on the three westerly tracks and especially on the track next west of the south-bound track, coupled with the backing of a train up across the crossing, without a stop, on a track usually devoted to south-bound trains, was not negligence.

So too, was the question of contributory negligence on the part of the deceased for the jury.

Counsel for defendant, in their elaborate argument, correctly state the law when they say ''It is the duty of the court, where the facts proven are such that all reasonable minds must agree, that plaintiff or his intestate has been guilty of negligence contributing to his injury, to instruct the jury to find for the defendant.'' It is only necessary for us, however, to say that we do not consider this by any means such a case.

Nor if a verdict was to be returned for the plaintiff, can we say that the one rendered was excessive.

There is no criterion except the limit of recovery authorized by the statute by which we can judge the excessiveness of a verdict for the death of a boy mentally and physically healthy, with his life before him. To this doctrine we are committed. Cicero &

Proviso St. Ry. Co. v. Boyd, 95 Ill. App. 514; United States Brewing Co. v. Stoltenberg, 113 Ill. App. 435; Chicago City Ry. v. Strong, 129 Ill. App. 511.

If, therefore, the instructions under which this case was tried fairly and properly stated the law, we see no reason for disturbing the judgment. Careful consideration of those which are objected to by appellant has failed to show us wherein they were erroneous.

The instruction on the measure of damages as follows: "If you find a verdict in favor of the plaintiff, you are not confined in assessing the damages to the pecuniary value, if any, of the services of the deceased child to his next of kin until he would have arrived at the age of twenty-one, but the jury may consider the pecuniary benefit, if any, which the next of kin might have derived from said deceased at any age of his life, had he not been killed"—was expressly approved in United States Brewing Company v. Stoltenberg, 211 Ill. 531, and we do not think that in a case of this character for the death of a minor before his wage-earning capacity was known, there has been anything ever said by the Supreme Court in any different sense. Moreover, at the request of the defendant, the jury were instructed that in considering the damages, if they found the defendant guilty, they should dismiss from their minds all consideration of grief, sorrow and mental affliction of the relatives of the deceased, and all feelings of personal sympathy and consider only the pecuniary injury. Sorrow or grief for the deceased, they were told, or any pain caused to the next of kin by the manner of his death, was not to be considered by the jury, nor could any recovery be had for the bereavement of the next of kin, or for the pain and suffering caused deceased or his surviving kindred, but that under the law, the pecuniary value of the life of the deceased to the next of kin left surviving was all for which damages could be assessed.

We think the jury were fully and correctly instructed as to the measure of damages.

An instruction on the preponderance of evidence,

which told the jury that if they believed the evidence bearing on the plaintiff's case preponderated in his favor, *although but slightly,* it would be sufficient to warrant a verdict in his favor, is objected to, and counsel quote from the opinion of this court in O'Donnell v. Armour Curled Hair Works, 111 Ill. App. 516, in which, speaking by Mr. Justice Adams, the court said the instruction was "obnoxious to criticism," and that its refusal was not error.

We have, however, never reversed a case because it was given, and since the statement by this court in the O'Donnell case, have often declined to do so. The Supreme Court has several times declared it not erroneous, and in Chicago City Ry. Co. v. Fennimore, 199 Ill. 9, declared it to be subject to no valid objection. See Libby, McNeill & Libby v. Kearney, 124 Ill. App. 339, and Hanchett v. Haas, 219 Ill. 548, and cases therein cited.

We find no error in the instructions given at the plaintiff's request, and complained of by the defendant because they do not explicitly mention the "experience" of the deceased boy as affecting the question of contributory negligence. It is sufficient for us to say that the reference to "like circumstances and like surroundings," supplies the defect, if there would otherwise be such a one in the instructions as counsel argue. In connection with the other instructions given they correctly and fully stated the law.

Nor do we think there was error in refusing either of the instructions, the refusal of which is complained of in argument. Applied to the circumstances of this case, it seems to us they would have been misleading. We think the trial judge was right in rejecting them. Those instructions that he did give at the defendant's instance fully and fairly presented the question of the care of the deceased for his own safety to the jury.

We see no error in the proceedings or the judgment in this cause, and the judgment of the City Court of Chicago Heights is affirmed.

*Affirmed.*