## Cicero & Proviso St. Ry. Co. v. Charles L. Boyd, Adm., etc.

1.  VERDICTS—*When Not to be Disturbed on Account of Their Amounts.*—In actions for damages sustained by reason of the death of a person by the wrongful or negligent act of another, unless it is apparent from something in the record that the trial has been unfair or that the jury has been influenced by some improper motive, their finding after it has been approved by the trial court, should not be disturbed because of its amount.

2.  DAMAGES—*Measure of, in Actions for Damages Sustained by Reason of the Death of a Person by Negligence.*—What may in fact be the measure of compensation in actions for damages sustained by reason of the death of a person by the wrongful or negligent acts of another can only be conjectured, and verdicts in such cases will not be disturbed on account of the amount found, unless it appears that the jury have been influenced by some improper motive.

3.  SAME—*When $5,000 is Not Excessive.*—Where a boy seven years of age, attending school, in good health and very bright, was run over and killed by a street car, the court can not say that a verdict for $5,000 was dictated by passion or prejudice, or was not rendered in the exercise of discretion and sound judgment of the jury.

**Trespass on the Case.**—Death from negligent act. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the October term, 1900. Affirmed. Opinion filed June 20, 1901.

**Statement by the Court.**—Alfred Camp, a boy aged seven years and nine months, on September 29, 1894, was run over by one of appellant's electric cars on that day, at

the intersection of West Lake and West Fifty-second streets, Chicago, and so injured that he soon thereafter died. His administrator, the appellee, brought suit to recover damages for the next of kin, composed of the father, mother and eight minor brothers and sisters of deceased. A trial, before the Circuit Court and a jury, resulted in a verdict in appellee's favor of $5,000 and judgment thereon, from which the appeal herein is taken.

Among other instructions given was the following on behalf of appellee:

" 1. The court instructs the jury that an electric railway company operating its cars on and along the public streets of the city must know, and in law is bound to know, that men, women and children have an equal right to the use of the highway, and will be upon it, and it is the duty of the company's servants to be on the lookout and to take reasonable measures to avoid injuries to persons on the streets."

John A. Rose and Louis Boisot, Jr., attorneys for appellant; W. W. Gurley, of counsel.

John F. Waters and C. Helmer Johnson, attorneys for appellee.

Mr. Justice Windes delivered the opinion of the court.

It is said that the evidence does not sustain the verdict, and in this regard it is argued that the evidence fails to show that appellant was guilty of any negligence in the operation of its car at the time in question, by reason of its speed. The declaration charges in substance that the negligence was in the operating of the car " with great speed, to wit, fifteen miles an hour."

It appears from the evidence that the intersection of West Lake and West Fifty-second streets, the place where the accident occurred, was, at the time, the terminus of the Lake Street Elevated Railway, the stairs of which came down at a point on the north side of Lake street about thirty feet east of Fifty-second street; that passengers leaving the elevated railway to go to points still further to the

west, ordinarily took appellant's electric cars near the west side of Fifty-second street; that large numbers of people were in the habit of taking appellant's cars at this point, and at the time of the accident, as the preponderance of the evidence shows, one of its west-bound cars had stopped across the west sidewalk crossing of Fifty-second street for the purpose of receiving passengers, and while so standing there, which some of the witnesses say was as long as one minute, though others say it was a less time, a good many passengers got upon the car; that deceased approached the tracks from the south on or very near the west sidewalk of Fifty-second street, as if intending to take appellant's west-bound car; some of the witnesses say he was looking northerly and others in a northeasterly direction, and either just as he stepped upon appellant's east-bound track, or while he was near it and next to the standing car on the other track, he was struck and run over by another of appellant's cars coming from the west, and injured. There is quite a conflict in the evidence as to the rate of speed at which the east-bound car was going immediately before the accident, and while it was a block or two distant from Fifty-second street. Three witnesses for appellee place the speed, in their opinion, at fifteen miles per hour. Two others, who did not fix the rate, say the car ran "fast," "full speed," "rather fast," and another witness for appellee, Simmons, says that when the car struck the boy it was running seven or eight miles an hour, "about that," and that when it was close to the other block, when he first saw it, the "car was running at a high rate of speed; should say that car was going twenty miles an hour." Six witnesses for appellant, in substance, testify that immediately before the accident occurred the car was going at from four to eight miles an hour; one, the conductor of the car in question, that it was going four or five miles an hour within 100 feet of Fifty-second street, and that was after it began to slow up; that the car did not go faster than five miles an hour between Fifty-second street and the street next west, which, it appears from

other evidence, was about 250 feet west. The motorman of the east-bound car was dead at the time of the trial. The motorman of the west-bound car says that when the little boy was hit his car had stopped and was taking on passengers; that he first noticed the east-bound car about three car lengths west of Fifty-second street, and that it was then going about seven miles an hour; that the motorman screamed and rung his bell, and at that time the motorman of the east-bound car was about three car lengths west of the witness. It appears that the car was thirty feet in length; that, as is shown by the preponderance of the evidence, witness' car was one-half or more of it west of the west crossing of Fifty-second street, as it stood still. This witness testified, as an expert, that a car going at the rate of fifteen miles per hour could be stopped in about 100 feet, and when going at six or eight miles an hour it could be stopped in twenty-five or thirty feet. Four other witnesses of appellant, who testified as experts, do not differ very materially as to the distance in which a car could be stopped going either at the rate of fifteen miles or at the rate of six or eight miles per hour. One of them, Griffin, however, who had an experience of nine years as a motorman operating electric cars almost every day during that time, says that one of these cars, going at the rate of fifteen miles per hour, could be stopped in eighty-five or ninety-five feet, and when going at six or eight miles per hour could be stopped between twenty-five or thirty feet.

There was also evidence on behalf of appellant tending to show that deceased was standing very near the tracks on which the east-bound car was, and when the car was within a few feet of him (one of the witnesses says when the car was within four feet) he stepped upon the track in front of it; and another, that he stepped upon the track about twenty-five feet in front of the car. The evidence also tends to show that when the child stepped upon the tracks, the motorman made every possible effort to stop his car and avoid the injury, but was unable to do so.

In view of all this conflict in the evidence, we think the

case presents a state of circumstances as to the question of appellant's negligence peculiarly for the consideration of the jury. If it is true, as the evidence of plaintiff's witnesses tends strongly to show, that the car approached Fifty-second street at the rate of fifteen miles per hour, and it is also true, as testified by the experts of appellant, that a car going at this rate could have been stopped within eighty-five to one hundred feet, and it is also true, as the evidence tends to show, that the child was standing upon or dangerously near the east-bound tracks, and it is also true, and this the clear preponderance of the evidence shows, that appellant's other car was standing over the crossing and receiving passengers, then it was clearly negligent, under these circumstances, for the motorman to have been running fifteen miles per hour. We think, all the evidence considered, the verdict as to appellant's negligence by reason of the rate of speed, is sustained.

It is also said that the judgment is excessive, but we are unable to say this is so. Numerous cases are cited on this point, both by appellant and appellee, none of which are, however, controlling, because of the difference in their facts and circumstances from the case at bar. No complaint is made that the trial was other than fair, or that the jury was influenced by any improper motives, and we therefore think, in view of the statute which, in the first instance at least, commits to the jury the question of what is a just and fair compensation in cases of this nature, we should not interfere with the judgment because of its amount. This child was attending school at the time, was in good health and very bright. In the nature of things the pecuniary damages could not be proven by direct evidence. What they would be must be largely a matter of conjecture. They might be nothing, or many thousands of dollars, according as the child should develop and succeed in life, or should prove kindly disposed or otherwise toward his next of kin. In speaking of the damages in a case of this kind, it was said by Mr. Justice Gary in Bradley v. Sattler, 54 Ill. App. 506:

" What may be in fact the damages here can only be con-
jectured, in homelier English, guessed at.   Under such cir-
cumstances the verdict of the jury, unless the court can say
that it was dictated by passion or prejudice and was not
rendered in the exercise of their 'discretion and sound judg-
ment,' should be final."

So far as any rule can be stated, we think the above is
sustained by the later authorities.   It is true that some of
the cases in this court have held that verdicts in somewhat
similar cases as high as this one were excessive, but unless
it is apparent from something in the record that the trial
has been unfair or that the jury has been influenced by
some improper motive, the finding of the jury, after its
approval by the trial court, should not be disturbed because
of its amount.   See R. R. Co. v. Wilson, 35 Ill. App. 348,
and cases cited; R. R. Co. v. Then, 159 Ill. 535; City of
Chicago v. Keefe, 114 Ill. 222; Hooghkirk v. D. & H. C.
Co., 63 Pr. Repts. (N. Y.) 328.

It is said, also, that the first of appellee's instructions
given, and quoted in the statement, is reversible error, and
counsel cite in support of the contention the case of West
Chicago St. R. R. Co. v. Dougherty, 89 Ill. App. 362, in
which a similar instruction was said by this court to be
inaccurate.   The instruction in that case was not held to
be ground for reversal, and even if it was, what was there
said must be considered with reference to the facts of that
case.   The accident then under consideration happened by
reason of the street car colliding with a wagon which "was
being driven diagonally across appellant's tracks" and
toward the street car from another track to the east of the
one on which the car was running, and not at a street
crossing.

In the very recent case of N. C. El. Ry. Co. v. Peuser,
190 Ill. 67, the Supreme Court had occasion to consider a
somewhat similar instruction, which it was held should have
been given, in a case where a collision occurred between a
street car and a wagon being driven along the car tracks
on which the car was coming.   The court, however, say
that " the rights, duties and liabilities enjoyed by and rest-

ing upon the individual and street railway companies, respectively, when a horseman, footman or driver of a vehicle is endeavoring to cross the track of a street railway company at the intersection of streets, are not here involved and need not be here adverted to. What we have said applies only to other portions of the streets than street intersections."

In the case of C. C. Ry. Co. v. Jennings, 157 Ill. 279, the Supreme Court said, in speaking of a crossing collision between a street car and vehicle, that the motorman "must not drive at an unreasonable rate of speed * * * must respect the equal rights of others to the use of public streets." The court, in the case at bar, also of its own motion gave an instruction in which the plaintiff's right of recovery was confined to negligence by reason of the rate of speed at which the car was run, and told the jury that if the evidence showed that the car "was not going at too high a speed, then the jury should find the defendant not guilty."

Inasmuch, therefore, as the accident here occurred at the sidewalk crossing, we are not prepared to hold that the instruction in question is cause for reversal and the judgment is accordingly affirmed.