114   345
a213s 545

## Chicago Terminal Transfer Railroad Company v. Patrick H. O'Donnell, Administrator, etc.

### Gen. No. 11,164.

1. TRESPASSER—*when person is not.* Held, under the particular facts of this case, that the plaintiff was not a trespasser.

2. PASSENGER—*who is not.* A laborer employed by a railroad company to work in connection with a train of cars under an arrangement by which he was to be taken to his work in the morning and conveyed home every night in such cars free of charge, is not a passenger nor entitled to protection as such, but is to be regarded as the servant of the company during the entire interval and bound in that capacity to render aid if necessary in promoting the passage of the train in either direction. But to such a person the railroad company owes the duty to exercise ordinary care and to notify him of the lowness of the viaduct and the danger liable to arise therefrom to a man riding on the top of one of its box cars, unless such danger was so obvious and apparent as to dispense with the necessity of notice.

3. OPINION—*when question calls for.* An objection to a question as to whether or not there was any room in a car for other men besides those who got in, is properly sustained in that the question calls for a matter of opinion; the proper form would have been, was there any vacant or unoccupied space in the car.

4. RIDING UPON TOP OF CAR—*when, not contributory negligence.* It will not be presumed as a matter of law that the train employees are unauthorized to permit a person to ride upon the top of a railroad car.

346    APPELLATE COURTS OF ILLINOIS.

VOL. 114.] Chicago Terminal Transfer R. R. Co. v. O'Donnell.

5. BURDEN OF PROOF—*to establish knowledge of danger.* The burden of proof is not upon the plaintiff to establish that his intestate did not have knowledge of the want of space between a viaduct and the top of the car upon which he was riding to permit him to stand upon the running board of such car and safely pass beneath such viaduct.

6. DEATH CAUSED BY WRONGFUL ACT—*who entitled to recover for.* The administrator of the deceased is the only person entitled to recover damages for the death of such deceased caused by the wrongful act of the defendant.

7. VERDICT—*when, not excessive.* In an action for death caused by alleged wrongful act, a verdict of $5,000 is not excessive where it appears that the deceased at the time of his death was about eighteen years of age, was proficient in the English language, had attended night schools and was "a very good boy," and left him surviving a brother, eight years of age, and a sister, aged twenty-two, who lived with his mother, to whom he gave all his earnings.

Action on the case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1903. Affirmed. Opinion filed June 3, 1904.

JESSE B. BARTON, for appellant.

GEMMILL, BARNHART & FOELL, for appellee.

MR. JUSTICE STEIN delivered the opinion of the court.

This is an appeal from a judgment for $5,000, recovered by appellee against appellant, for the alleged negligent killing of appellee's intestate, Frank DiAddario.

The deceased (hereinafter called "Frank") was eighteen and a half years old and working for appellant as an unskilled laborer on its tracks. He lived with his mother and younger brother at the house of a friend whose wife was in Europe. Frank's mother was the housekeeper. He earned from $12 to $15 a week and gave all his earnings to his mother. He was killed July 29, 1898, by his head coming in contact with a viaduct over appellant's tracks at Halsted street in Chicago while riding on the top of a box freight car going east. Frank commenced working for appellant fourteen days before his death but during that time was actually at work only eleven days. Each morning, with the "gang" of which he was a member, he was conveyed on a passenger

train of appellant's from Halsted street to Western avenue and returned in the same way in the evening, except on the day of the accident. The station at Halsted street is just east of the viaduct, and the local passenger trains stop there. On July 29 Frank rode as usual in a passenger train from Halsted street to Western avenue, and from there the entire gang, consisting of thirty-five men and a foreman, together with ten or twelve men of another gang, proceeded south to Tracey avenue, or 103rd street, where they worked during the day. Between 5:20 and 6:00 o'clock in the evening an engine pulling one box freight car was sent by appellant for the men, and the evidence tends to show that they were told by the foreman to get into the car and put their tools inside. After starting, the car went north to Western avenue and thence east to Halsted street. Most of the men were inside, but Frank and three to seven other laborers, and the brakeman and a friend of his, rode on the top of the car. The laborers sat on the running board which ran the length of the car in the middle, between the two sides. In going east the car passed under two viaducts before reaching the one at Halsted street. The smoke from the locomotive which was immediately ahead of the car blew back over it and obscured the viaducts from view. The distance between the running board and the lower side of the roof of the viaduct at Halsted street was four feet and seven inches. As the car neared the viaduct Frank raised himself from the running board into a standing or nearly a standing position and was struck by the viaduct and killed. He was the only one injured. So far as the record shows this was the only time when he rode on the top of a car under the viaduct, and he had not been warned by appellant of the short distance between the viaduct and the top of the car, or of the danger in standing up, and he had no knowledge of the distance or of the danger, unless such knowledge is to be imputed to him from the fact that the viaduct was visible from the point where he boarded the train in the morning and alighted from it in the evening.

348    APPELLATE COURTS OF ILLINOIS.

VOL. 114.] Chicago Terminal Transfer R. R. Co. v. O'Donnell.

It has been decided under circumstances similar to the foregoing that a laborer employed by a railroad company to work in connection with a train of cars under an arrangement by which he was to be taken to his work in the morning and conveyed home every night in such cars free of charge, is not a passenger, nor entitled to protection as such, but is to be regarded as the servant of the company during the entire interval, and bound in that capacity to render aid if necessary in promoting the passage of the train in either direction. Russell v. R. R. Co., 17 N. Y. 134; Vick v. R. R. Co., 95 N. Y. 267; McQueen v. R. R. Co., 30 Kan. 689. Holding this to be the law, as we are disposed to do, it was still appellant's duty to exercise ordinary care in conveying the deceased to and from his home and to notify him of the lowness of the viaduct and the danger liable to arise therefrom to a man riding on the top of one of its box cars, unless such danger was so obvious and apparent as to dispense with the necessity of notice. C., M. & St. P. R. R. Co. v. Carpenter, 56 Fed. 453. In that case, the court, while speaking of overhead bridges or other overhanging structures adjacent to the tracks of railroad companies, said : " We think the exercise of ordinary care requires of a company some warning, either verbally or by whiplashes, to any of those persons who in the discharge of their duties are liable to sustain injury in consequence of such structures." It is not denied that appellant gave no warning of the lowness of the viaduct to the deceased or the other laborers except in the shape of tell-tales or whiplashes placed a short distance west of the viaduct. But it does not appear that the deceased understood their significance as a danger signal, or might be presumed to have understood it from any general public knowledge on that subject.

The jury found that he was in the exercise of ordinary care for his own safety, and we are not inclined to disturb their finding. There is evidence tending to show that the inside of the car was crowded with men and tools so that there was no room left for more, and for that reason the

deceased and a few other laborers climbed and rode upon the top, which they did without any objection from appellant's employees in charge of the train. When he came near to the place where he was in the habit of alighting he arose, presumably with a view of getting ready for descending. He was riding on the top of the car for the first time, and the smoke of the engine immediately in front of him concealed from him the danger of his position. The fact that he would not have been injured if he had not arisen is not controlling or decisive upon the question of contributory negligence. It was simply a circumstance to be considered with all the others.

The court sustained an objection to a question whether there was any more room in the car for other men besides those who got in. That was calling for a matter of opinion. The question should have been, was there any vacant or unoccupied space in the car.

The refusal of the instruction that there could be no recovery if the deceased was riding on the top of the car "without the permission and authority of the defendant," was proper. What proof there was, tended to show such permission and authority, and there was none to the contrary. Deceased was not a trespasser. Another instruction was properly refused because by it the court was asked to tell the jury as a matter of law that "neither a conductor nor a brakeman nor a section foreman is presumed to have authority to permit any person * * * to ride or to be on the top of a box freight car while in motion." Other refused instructions were so drawn as to submit to the jury the question of the deceased's knowledge of the want of sufficient space between the viaduct and the top of the car. There was an utter want of proof of such knowledge on his part. Still another instruction imposed upon appellee the burden of proving that his intestate did not have this knowledge, and could not have had it by the exercise of ordinary care. That was clearly matter of defense. C. & E. I. R. R. Co. v. Hines, 132 Ill. 161.

Another refused instruction was framed upon the theory

that the deceased's mother (his father being dead), and not appellee as administrator, was entitled to what he would have earned, had he lived, from the time of his death until he became of age, and that therefore appellee could not recover these earnings. Such is not the law. The right of a father (or if he is dead, the mother) to maintain an action for the death of their child did not exist at common law, but rests upon statutory provisions. Shedd v. Moran, 10 Brad. 618.

At the time of his death the deceased was eighteen years and five months old. His father was dead. He had a brother eight years old, a sister twenty-two, and lived with his mother, to whom he gave all he earned. He was proficient in the English language, had attended night schools in this city, and was called by the witnesses " a very good boy." Under these circumstances the judgment cannot be regarded as excessive. Bradley v. Sattler, 54 Ill. App. 504; C. & P. St. Ry. Co. v. Boyd, 95 Ill. App. 510.

The judgment is affirmed.

*Affirmed.*