## Charles A. Klinck, Appellee, v. Chicago City Railway Company, Appellant.

### Gen. No. 16,966.

1. CARRIERS—*where employee intends to use pass.* In a personal injury action, where plaintiff, a clerk in the employ of defendant street railway, is given a monthly ticket as a part of his compensation, and in going to work is injured when about to get on defendant's car, there is a relation of carrier and passenger, and the intended use of the ticket does not produce the relation of master and servant.

2. CARRIERS—*pass accepted as part of compensation not a gratuity.* Where it is agreed when plaintiff enters the employ of a defendant street car company that he shall receive a certain sum per month and transportation, the monthly ticket which he receives is a part of his compensation and not a gratuity.

3. EVIDENCE—*when conversation between plaintiff and superintendent regarding terms of employment is admissible.* In a personal injury action the conversation between plaintiff and superintendent of defendant railway company regarding terms of employment is admissible to show whether or not employee's ticket is a gratuity.

4. AGENCY—*authority of superintendent to promise employee ticket as part of compensation.* Where it is shown that defendant's superintendent exercised authority to hire and discharge employees and to determine their compensation, and defendant ratified his acts, there is sufficient evidence to establish his authority to bind defendant in promising plaintiff transportation as a matter of right

and part of his compensation, though inconsistent with terms on the back of the ticket.

5. EVIDENCE—*similar piles of stone on other streets.* In a personal injury action, in order to show the purpose of a pile of stone at the place of accident, it is proper to admit testimony concerning the use by defendant of like stone on other streets.

6. CARRIERS—*effect of terms on back of ticket whereby employee assumes risk.* In a personal injury action, where an employee's ticket is given as part of compensation, a stipulation on the back that employee assumes risk of accident is contrary to public policy and not binding.

7. CARRIERS—*instructions.* In a personal injury action, where plaintiff, a clerk of defendant street car company, was injured when about to get on one of its cars to go to work, it is not error to instruct the jury that if they believe "from the evidence that it was one of the express or implied terms" of plaintiff's contract of employment that defendant should furnish free transportation and that the ticket was not given as a gratuity "without any valuable consideration," then a stipulation on the back whereby employee agrees to assume all risk of accident is not binding on plaintiff.

8. CARRIERS—*duty of carrier to one about to become a passenger.* In a personal injury action, where plaintiff was injured when about to board defendant's car, it is not error to instruct the jury that, though defendant's servants did not know plaintiff intended to board the car and had not expressly or impliedly accepted him as passenger, yet defendant was bound to use reasonable care to avoid injuring him.

Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed January 29, 1913. Rehearing denied February 14, 1913.

SAMUEL S. PAGE and C. LeROY BROWN, for appellant; LEONARD A. BUSBY, of counsel.

JAMES C. McSHANE, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This is a suit instituted in the Superior Court by Charles A. Klinck against the Chicago City Railway Company to recover damages for personal injuries, wherein a trial by jury resulted in a verdict and judg-

ment against the defendant for $6,500, to reverse which judgment the defendant prosecutes this appeal.

The declaration contains two counts, each of which alleges the possession of and operation by the defendant, on September 29, 1907, of a street railway upon and along Cottage Grove avenue, whereon the defendant operated as a common carrier certain street cars for the conveyance of passengers, and which said railway then and there crossed and intersected Bowen avenue, where the defendant was accustomed to stop its said cars for the purpose of receiving and discharging passengers. The first count further alleges that at the time and place aforesaid plaintiff was a clerk by occupation, and was then or there at or near said crossing or intersection, at about the place where the defendant was so accustomed to receive and discharge its passengers, for the purpose of becoming a passenger for a valuable consideration, moving from him to the defendant, upon one of its said street cars, which it was then and there operating northward upon and along said railway, and when said car reached the place where the plaintiff was as aforesaid, the defendant, through its servants in charge of the operation and management of said car, but who were not his fellow-servants, reduced the speed of said car until it was moving not much, if any faster than a man could walk, and apparently for the purpose of receiving the plaintiff as such passenger upon said car; that while and when the speed of said car was so reduced as aforesaid, he, at the place aforesaid, and while exercising ordinary care and caution for his own safety, then and there attempted to board said car in order to become such passenger thereupon, and while he was in the act of so boarding said car, but before he had fully and safely boarded the same, defendant's said servants, so in charge of the operation and management of said car, although they knew or by the exercise of due care in that behalf would have known that plaintiff was so in the act of boarding said car, then

and there wrongfully and negligently, and without warning to the plaintiff, increased the speed, and started said car forward suddenly and violently, and as a direct result and in consequence of the premises, plaintiff was thereby then and there thrown violently from said car to and upon the ground there, etc.

The second count further alleges that prior to the time aforesaid, which was in the night-time, and while it was dark, the defendant wrongfully and negligently placed and piled large quantities of stone, or gravel, immediately alongside of its said railway, at about the place where it was so accustomed to receive and discharge passengers upon and from its said car, and it negligently permitted said stone, or gravel, to be and remain at said place from thence to the time of the injury hereinafter complained of; that at the time and place aforesaid plaintiff was a clerk by occupation, and was then and there at or near said crossing or intersection, at about the place where the defendant was so accustomed to receive and discharge passengers, for the purpose of becoming a passenger for a valuable consideration, moving from him to the defendant, upon one of its said street cars which it was then and there operating northward upon and along said railway, and when said car reached the place where the plaintiff was as aforesaid, the defendant, through its servants in charge of the operation and management of said car, but who were not his fellow-servants, reduced the speed of said car, until it was moving not much, if any, faster than a man could walk, and apparently for the purpose of receiving the plaintiff as such passenger upon said car; that while and when the speed of said car was so reduced, as aforesaid, he, at the place aforesaid, and while exercising ordinary care and caution for his own safety, then and there attempted to board said car in order to become such passenger thereon, and while he was in the act of so boarding said car, but before he had

fully and safely boarded the same, defendant's said servants, so in charge of the operation and management of said car, although they knew or by the exercise of due care in that behalf could have known that plaintiff was so in the act of boarding said car, then and there wrongfully and negligently, and without warning to the plaintiff, increased the speed and started said car forward suddenly and violently, and as a direct result and in consequence of the speed of said car being so increased and said car being started forward as aforesaid, and of the existence and presence of said stone, or gravel at said place, the plaintiff was thereby then and there jerked violently from said car to and upon said stone, or gravel, and said stone, or gravel, caused or contributed to cause plaintiff's left foot to get under said car and one or more of the wheels of said car thereby then and there passed over plaintiff's left foot, etc.

At the time of his injury on September 19, 1907, appellee lived on Bowen avenue and was employed by appellant as a clerk at its barns, located at 39th street and Wabash avenue, and had then been so employed for about eight months. His employment commenced at 6 o'clock in the evening and continued until about 4 o'clock in the morning, and he was allowed about half an hour to get his "supper," for which purpose he usually left the office at about half past ten or eleven o'clock and patronized some near by restaurant or went to his home. On the night in question he quit work about half past ten o'clock and went to his home on street cars operated by appellant, and after having had his supper he walked east on the south side of Bowen avenue to Cottage Grove avenue, where he crossed over to the northeast corner of the intersection of said streets for the purpose of boarding one of appellant's north-bound cars and being carried to the place of his employment.

Four or five days following his employment by appellant, appellee was given for his personal use an

"employees' 62 ride monthly ticket," upon the face of which were printed the figures 1 to 62 inclusive, and upon the back of which was printed the following:
"Conditions.

"This ticket is for the exclusive use of the person whose name appears on its face. If presented by any other person, or after expiration of the month for which issued, the conductor will take it up and collect regular fare.

"On each presentation of this ticket, the conductor will accept it only for the passage of the person whose name appears on the face of ticket and will punch out one number for each ride until all numbers are punched. If the ticket is presented after all numbers have been punched the conductor will take it up and collect regular fare.

"This ticket is good for 62 rides during the month for which issued and for two days preceding the first day of that month.

"In consideration of the issuance of this ticket the person accepting and using it agrees to abide by its conditions and assumes all risks of accident, and expressly agrees that this Company shall not be liable under any circumstances, for any injury to the person or for any loss or injury to the property of the passenger using this ticket.

"The Company reserves the right to recall or take up this ticket at any time.

"This ticket must be returned before another will be issued."

A like ticket was given to appellee each month during his employment, and upon the occasion in question he had in his possession a like ticket for the month of September, 1907, which he purposed using for his transportation.

Appellee testified that when he first applied to appellant's superintendent for employment he was informed by such superintendent that there was then no opening for him, but that when there was an opening for him he would be notified and employed; than when he was notified about two weeks later that he might

then have employment in the office he asked the superintendent what his wages would be, and the superintendent replied, "$70 a month, and you will get your transportation;" that he continued to receive the same wages up to the time of his injury.  There is no contradiction of the testimony of appellee regarding what was said at the time he was employed.

Concerning the happening of the accident, appellee testified that when he reached the north cross-walk on Cottage Grove avenue, he looked south for an approaching car and saw one at about 43rd street, a distance of two or three blocks south; that he was smoking and desired to enter the car by the front platform and so walked to a point about 45 or 50 feet north of said cross-walk and near the east rail of the north-bound track, where the car would ordinarily stop to discharge and receive passengers at the front platform; that as the car approached north it had a headlight, and when it reached a point about 25 feet south of the south cross-walk he signaled for it to stop by holding up his hand; that he did not see the motorman at that time, but observed him as the car approached and about the time he attempted to board it; that as the car approached it slowed down so that when it reached the point where he was standing it was traveling at about the speed a man would walk; that a man then stepped off the car at a point about two feet south of where he was standing; that he then started to get on the car and took hold of the rail with his left hand and got his foot on the step and was just about to enter the car when it made a sudden and violent start forward; that the violent starting forward of the car loosened his foothold on the step and his foot then came in contact with a pile of crushed stone lying close to the track and his hold on the hand rail was loosened and he fell in such a position that the wheels of the car passed over his left foot.  On his further examination appellee testified that he took hold of the rail with his right hand and stepped upon

the step with his right foot. After the accident to appellee the car did not stop, but proceeded to the end of its trip.

It is uncontroverted that at the time in question, and for three or four weeks prior thereto, a quantity of crushed stone, estimated as two or three wagon loads, was piled outside of and near the east rail of appellant's north-bound track, beginning at a point about 50 feet north of the north cross-walk at the intersection of Bowen and Cottage Grove avenues and extending north 10 or 15 feet.

The first controversy has reference to the relation which may properly be held to have existed between the parties at the time of appellee's injury, as determining their respective duties and liabilities.

It is insisted on behalf of appellant that the negligence relied on by appellee must be regarded as a breach either of the duty owed by a carrier to a passenger or of the duty owed by a master to a servant; that if appellee's status was that of a passenger, he was a free passenger and in that event the stipulation in the ticket exempting appellant from liability was binding; that if appellee's status was not that of a free passenger, it was that of a servant being carried to and from his work by his employer, in which event the judgment cannot be sustained, because the declaration does not count upon the breach of the duty owed by a master to a servant, and because the trial in the court below was not conducted in accordance with the settled law governing the relation of master and servant.

While counsel for appellee does not disavow a right of recovery predicated upon the relation either of passenger and carrier or master and servant, but argues that a recovery based upon either of said relations may be sustained, he insists that appellee's right of recovery is not necessarily referable to the existence of either of said relations; that as the declaration alleges that appellee was at the place in question "for

the purpose of becoming a passenger," and that he "then and there attempted to board said car in order to become such passenger thereupon," it may properly be held that neither the relation of passenger and carrier nor of master and servant had attached, and in that event the stipulation in the ticket exempting appellant from liability was inoperative and the rules governing the relation of master and servant were inapplicable.

We are unable to acquiesce in the view that the relation existing between appellant and appellee may properly be designated as that of strangers, and we dismiss that subject without further discussion.

What facts constitute the contract relation of passenger and carrier or master and servant present a question of law, and it becomes necessary for us upon a consideration of the facts alleged and proved to determine which, if either of those relations, existed between appellant and appellee at the time of the latter's injury.

It is uncontroverted that at and immediately prior to the time appellee attempted to board the car he was at a place in the street where the cars operated by appellant customarily stopped upon signal to discharge and receive passengers. In that respect such place was analogous to a depot platform or other like place where trains ordinarily stop to discharge and receive passengers.

In considering what facts will create the contract relation of carrier and passenger, in Chicago & E. I. R. Co. v. Jennings, 190 Ill. 478, it was said:

"It is not necessary to create the relation, that the passenger should have entered a train, but if he' is at the place provided for passengers, such as the waiting room or platform at the station, with the intention of taking passage and has a ticket, he is entitled to all the rights and privileges of a passenger. A railroad company owes a general duty to receive and carry those who present themselves at the time and place

provided for passengers requiring transportation. In Chicago & A. R. Co. v. Wilson, 63 Ill. 167, Wilson, after purchasing a ticket for a train, was standing on a platform constructed by the railroad company for the convenience of passengers between the main track and a switch track. He was waiting for the passengers to alight from the train upon which he expected to take passage, when he was struck and injured by another train. The court regarded him as a passenger and held the company liable for the character of the platform. In North Chicago St. R. Co. v. Williams, 140 Ill. 275, it was held that the contract constituting the relation of carrier and passenger might be implied from the attempt of Williams to enter, in a proper manner, a street car as a passenger, with the intention of being transported thereon.''

The court also there quoted with approval from Cooley on Torts, 653, as follows:

''When the passenger has presented himself at the proper place to be transported, his right to care and protection begins.''

In Booth on Street Railways (2nd Ed.) sec. 326, it is said:

''The duty of a common carrier does not extend to the personal safety of one who is not actually a passenger. But it is not necessary that there should be an express contract to constitute the relation of carrier and passenger, nor that there should be a consummated contract. It may be implied from slight circumstances, and may arise before the payment of fare or entry into the car. The existence of the relation depends largely upon the intention of the person at the time he enters, or while attempting to enter. He is not necessarily a trespasser after he boards the car, even if no fare has been collected from him before he suffers an injury, simply because he has violated a rule of the company as to the mode of getting on. Where a person intends to take passage on a street car and has hailed it for that purpose, and it has been stopped to enable him to enter, he is to be regarded as a passenger while he is in the act of carefully and prudently attempting to step upon the platform.''

Unless the fact that appellee had in his possession the employees' ticket heretofore mentioned, which he then intended to present and use for his transportation, and the further fact that he was employed by appellant in the capacity of a clerk, precluded the existence of the relation of carrier and passenger and created the relation of master and servant, it must be held that when he attempted to board the car at the place in question there was created the relation of carrier and passenger and not the relation of master and servant.

For the purposes of this case, it may be conceded that if the employee's ticket was given to appellee as a mere gratuity the stipulation thereon exempting appellant from any liability for injury to his person would be effective and would preclude a recovery.

It is undisputed that when appellee entered the employment of appellant it was agreed that he should receive as compensation for his services $70 a month and his transportation. His transportation upon the cars of appellant whenever he chose to avail himself of it, whether in going to or from his work or for any other purpose, was something of money value which must necessarily have been offered and accepted as an inducement to appellee to enter the employment of appellant.

It can hardly be doubted that if appellee had at the time in question intended to pay the fare for his transportation in money of his private means the relation thus created would be that of carrier and passenger, and we are unable to perceive any substantial distinction as affecting that relation between the payment by appellee of his fare in cash and the payment by him of his fare in services or money's worth. Sufficient facts are alleged in the declaration to constitute the relation of carrier and passenger between appellant and appellee at the time in question, and as the ticket was not a gratuity, but was offered and accepted as in part compensation for appellee's serv-

ice, the intended use by appellee of such ticket at the time in question did not operate to substitute the relation of master and servant for that of carrier and passenger.

In support of its insistence that the relation of master and servant existed between appellant and appellee at the time in question, appellant relies upon the authority of certain cases, wherein it is said, in substance, that a person in the employ of a railroad company, who travels back and forth from his home to his place of employment on the cars of the company, and whose transportation free of charge constitutes a part of his contract for services, is, while so traveling, not a passenger, but a servant, and is subject to the rules governing the relation of master and servant. Vick v. New York Cent. & H. R. R. Co., 95 N. Y. 267; Ionnone v. New York, N. H. & H. R. Co., 21 R. I. 452; Chicago Terminal Transfer R. Co. v. O'Donnell, 114 Ill. App. 345; Illinois Cent. R. Co. v. Leiner, 202 Ill. 624; Walsh v. Cullen, 235 Ill. 91. In all of these cases and in others wherein substantially a like statement appears the application of the rule announced related to cases wherein the transportation of the servant was purely gratuitous, or the servant while being carried by the master was subject to the direction and control of the master. There are, however, expressions in the Vick case, *supra,* to which we cannot give our assent.

In Doyle v. Fitchburg R. Co., 162 Mass. 66, and 166 Mass. 492, plaintiff's decedent, employed as a clerk in the freight department of defendant, was killed while traveling for his convenience upon defendant's railroad upon a ticket similar in form to the one given by appellant to appellee and containing the like stipulation exempting the defendant from liability for personal injuries, and it was held that the ticket was not a gratuity and that the relation of carrier and passenger existed between the deceased and the defendant.

In Dickinson v. West End St. Ry. Co., 177 Mass. 365, the plaintiff, a motorman in the employ of the defendant, having finished his work for the time being, was, while riding home to his dinner, upon the front platform of one of defendant's cars, injured by the negligence of the motorman operating the car. Plaintiff was thus riding under a rule "permitting policemen, firemen, advertising agents, news agents and employees of the defendant company in uniform to ride free at any time, such persons being required to ride upon the front platform so far as practicable," and it was held that while so riding he was a passenger and not a servant. The case was held to come within the decision in Doyle v. Fitchburg R. Co., *supra*, and it was said:

"At the time of the accident he (Dickinson) did not stand in the relation of a servant to the defendant. His time was his own and he owed the defendant no duties until the time arrived for resuming his work. It was no part of his duty to the defendant, as a servant, to take the car on which he was riding, and go to a particular place for his dinner. He might go where he pleased and when he pleased during the interval before coming back to his work. This case is different in this particular from cases in which the plaintiff was riding in the line of his duty in the course of his employment. His rights were the same as if, after finishing his day's service, he had taken a car in the evening to visit a friend or to do any business of his own."

This language is applicable to the facts in the case at bar.

Appellee in going home to his supper was serving his own convenience. His time was his own and he was not then in the performance of any duty which he owed to appellant.

The doctrine announced in the Doyle cases, *supra*, is expressly recognized in Walsh v. Cullen, 235 Ill. 91.

If a right of recovery exists in this case, it is to be predicated upon the relation of carrier and passen-

ger and not upon the relation of master and servant.

It is next urged that even conceding the relation between the parties was that of carrier and passenger, the verdict is contrary to the manifest weight of the evidence.

The testimony of appellee relative to the manner in which and the place at which he attempted to board the car, the speed at which the car was traveling, the presence at the place of the pile of crushed stone, the sudden jerk of the car forward, and the happening of the injury, is corroborated in its substantial particulars by the testimony of Edward R. Rowlands, who was a passenger riding upon the front platform of the car and who alighted therefrom immediately before appellee attempted to board the car at the same platform.

William K. Ellington, called as a witness by appellee, testified that at the time of the accident he was standing on the northwest corner of Cottage Grove and Bowen avenues and saw appellee cross from the southwest corner to the northeast corner and stand just about where a person would get on the front end of the car north of the north cross-walk; that he noticed the car coming and that as it approached the crossing it slowed up to a speed about as fast as a man would walk; that the car then started forward again in a kind of a jerk; that after the car passed on, he heard appellee hollering for help and went to his assistance.

The motorman testified that he did not see appellee as the car approached the crossing and that he received no signal for the car to stop, other than a request from Rowlands, who was on the front platform, to slack up, which request was made at about the south side of Bowen avenue; that Rowlands alighted from the car at about the north edge of the north cross-walk while the car was going at a speed of about six miles an hour and before it had reached the place where it would have stopped, if it was going to stop; that he was watching Rowlands to see that

he got off safe, because the car was going a little fast for a man to jump off; that he saw Rowlands jump off and saw that he landed safe; that cars running north usually slowed up at that point, because there was an incline of about two feet to a railroad subway a short distance further north; that when he slacked up to let Rowlands jump off the power was off and the breaks were set; that after Rowlands jumped off the brakes were thrown off and the car went ahead; that the car did not start up with any sudden or violent jerk; that he did not see anybody take hold of the car or attempt to take hold of it.

Prior to the trial and while appellee was in the hospital, appellant procured from him a signed statement of the facts and circumstances attending his injury, and appellant also procured from the witness, Rowlands, on separate occasions prior to the trial three statements signed by the witness relative to the occurrence in question. The testimony of such witnesses is not in complete accord with their signed statements, but there is no such variance as would warrant the jury or the court in concluding that their testimony bearing upon the facts in controversy was unworthy of credence. We are unable to say that the verdict of the jury upon the issues of fact involved was clearly unwarranted.

It is urged that appellee was erroneously permitted to testify to the conversation with appellant's superintendent relative to the terms of appellee's employment, because the same was in contradiction of and inconsistent with the alleged agreement expressed on the employee's ticket, which was thereafter accepted and impliedly acquiesced in by appellee, and because it was not shown that appellant's superintendent had any authority to bind it by promising transportation to appellee as a matter of right. Appellant's superintendent exercised authority to hire and discharge employees and to designate and determine their compensation, and the terms of their employment, and the authority so exercised by him was ratified by ap-

pellant by its paying to appellee the wages agreed upon and by its furnishing to appellee his transportation upon its railway. These facts were sufficient to establish the authority in question of appellant's superintendent. The agreement for appellee's compensation, as expressed by appellant's superintendent, was material in determining whether or not the employee's ticket was a mere gratuity. If it was a mere gratuity, it may be conceded appellee was bound by its conditions, but if it was not a gratuity, the conditions thereof here particularly involved were contrary to public policy. The objections to the testimony were properly overruled.

The presence of a pile of crushed stone in close proximity to appellant's track was not denied, but appellee sought to show that the stone was placed there, or caused to be placed there, by appellant for use by it in repairing or constructing its tracks, and over the objection of appellant, was permitted to show that similar stone was used by appellant for such purposes and was piled in like manner at other places in streets where it maintained street car tracks. The witness, John E. Klinck, a brother of appellee, testified that he had observed the use by appellant of like stone all along Cottage Grove avenue, and on 39th, 43rd and 47th streets in making track bed. The testimony had some tendency, even though slight, to prove the fact sought to be adduced and was not improperly admitted. It was a circumstance proper to be considered by the jury, even though entitled to but little weight. The objection to the admission of this evidence is, however, stripped of any force by the 25th instruction, given at the instance of appellant, as follows:

"You are hereby instructed that it is immaterial in this case whether the stone in question, at or near the place of the accident in question, was put there or was there by the defendant or its procurement."

The first instruction, given at the request of appellee, is as follows:

''The court instructs the jury that if you believe from the evidence that it was one of the express or implied terms or conditions of plaintiff's contract of employment that defendant should furnish him free transportation upon its cars and that the employee's ticket, introduced in evidence, was not given him as a pure gratuity, without any valuable consideration, then the stipulation or condition on the back of said ticket, to the effect that the person accepting and using said ticket agrees to assume all risk of accident, and expressly agrees that defendant company shall not be liable under any circumstances for any loss or injury, was not and is not binding upon the plaintiff.''

It is said this instruction is erroneous, because it directed the jury to ascertain either the expressed or implied terms of appellee's contract of employment; because there could not be both express and implied terms covering the same matter; because there is no evidence upon which to base the reference to the implied terms of employment; because it left to the jury the determination of a question of law, viz., whether or not the employee's ticket was given to appellee as a pure gratuity without any valuable consideration, the jury not being informed as to what constituted valuable consideration.

Within the holdings in Doyle v. Fitchburg R. Co., *supra,* Dugan v. Blue Hill St. Ry. Co., 193 Mass. 431; Harris v. Puget Sound El. Ry., 52 Wash. 289; and Whitney v. New York, N. H. & H. R. Co., 43 C. C. A. 19, there was some evidence tending to show the terms of appellee's employment by implication, and the reference thereto was not improper. The competent testimony of appellee, which was not controverted, warranted the jury in finding that there was an express agreement as to the terms of his employment and no harm could have resulted to appellant from the reference to any implied terms. In the sense in which it is involved in the case and is used in the instruction, the term ''valuable consideration'' could not have been misinterpreted by the jury.

The thirty-second instruction tendered by. appellant was modified by the court by adding the words appearing in italics, and as given to the jury, was as follows:

"If plaintiff has failed to prove by a preponderance of all of the evidence, under the instructions, that defendant's employees on the occasion in question knew that plaintiff intended to board the car in question and expressly or impliedly accepted him as a passenger, then the plaintiff did not in law become a passenger upon said car *and this defendant was obliged only to use reasonable care to avoid injuring the plaintiff.*"

It is insisted that the instruction was improperly refused as tendered and was improperly modified by the court. The instruction, as tendered, does not negative the presence of appellee at the time and place in question, and if, as the evidence tended to show, he was then present at a place where passengers were ordinarily discharged and received at the front platform of the car, appellant was at least bound to exercise reasonable care to avoid injuring him, and this notwithstanding the servants of appellant did not know that appellee intended to board the car and such servants had not expressly or impliedly accepted appellee as a passenger. The position and conduct of appellee at the time and place in question distinguishes the case at bar from Illinois Cent. R. Co. v. O'Keefe, 168 Ill. 115, relied upon by appellant in support of its criticism of the instruction as given.

Our attention is directed to certain incidents at the trial which, it is claimed, manifested hostility on the part of some of the jurors toward appellant, but we perceive nothing therein requiring the reversal of the judgment.

There is no substantial error in the record affecting the merits of the case and the judgment is affirmed.

*Judgment affirmed.*